Matthias, J.
 

 The issue presented here is made by motion of the relator for judgment on the pleadings, and the question for determination therefore is whether, under the state of facts presented by the answers, the railroad companies rightfully occupy Railroad street with their said track. It appearing also that the city of Sandusky by and through its council, by legislation duly enacted, required the removal of two of said tracks from
 
 *518
 
 Water street to Railroad street, and authorized the construction of the third track in question upon Railroad street, under conditions which, were accepted and complied with, our question really is whether the city of Sandusky had authority to grant the right to construct and maintain the track in Railroad street, and over and across the open public slips hereafter referred to.
 

 Without restating the facts set forth in the answers let us observe the physical conditions as they were at the time of the dedication of the streets and public slips to public use in 1818, and as they are at the present time, together with the method and manner of change thereof during the intervening years. Water street at the time of the dedication was the northermost east and west street, and its north line was in great part coterminous with the shore line of Sandusky Bay. The north and south streets terminated at Water street. North of some of them, and also north of the north line of Water street, were plots of ground designated as “open and public slips.”
 

 The certificate of the original proprietors filed with the plat of the city of Sandusky, as therein denominated, referred to the open spaces north of Water street and opposite the northern terminus of each of the north and south streets as follows:
 

 “The open and public slips to the water from Water street are as follows, viz: On Columbus avenue, 10 rods in width, on Wayne and Jackson streets, 9 rods, and on all the other streets 8 rods in width, and so to remain forever.”
 

 These “open and public slips” referred to are conceded to have been land extending to the waters
 
 *519
 
 of Sandusky Bay. In 1848, by proceeding in the common pleas court duly and regularly had, a street was established, called Railroad street, which extended east and west from Lawrence to Franklin street, north of and parallel with Water street, its south line being at a uniform distance of 80 feet north of the north line of Water street. The owners of lots fronting on the bay, known as water lots, had constructed docks and wharves into the bay for the purposes of navigation, and Railroad street was established to connect same and provide an avenue for communication and transportation. It was soon thereafter that the city required the railroad tracks theretofore laid in Water street to be removed therefrom to Railroad street, as above noted, and also required the railroad to do a large amount of filling and grading, both in Railroad street and in what were called “public slips” between Water street and Railroad street, and those tracks have been used by the companies ever since, and the third track laid in 1880, pursuant to the grant of the city, has been maintained and used since that time.
 

 It is the contention of the relator that under and by virtue of the terms of the dedication, the so-called “public slips” extend to the water from Water street, and that they must be open and public; that they must- be so held by the state as trustee; and that consequently the railroad companies have no right to the use and occupancy thereof, the grant therefor by the city of San-dusky being without authority. The claim of the relator is, further, that assuming that these public slips were land, the process of filling was a mere
 
 *520
 
 extension of the public slips, and the made land contiguous thereto was impressed with the same trust with which the slips themselves were impressed. The relator therefore does not challenge the authority of the city to grant the railroad company the right to the use of Railroad street as such, but only the right to occupy with its track these public slips, which, under the theory and contention of the relator, extend from "Water street to the water’s edge of Sandusky Bay. It is the view of the relator that, without proceedings in condemnation, the occupation by the railroad of these public slips is wrongful and consists of an abuse and misuse of the franchises, privileges, and rights of the defendant companies.
 

 The claim of the railroad companies, with which the city of Sandusky makes common cause, is, first, that the use and occupancy of the street as granted by the city, and as accepted by the companies, are no diversion of the dedication; and, second, that the restrictions imposed on the public slips by the dedicators cannot extend to the filled lands so as to restrict the use to which they have been appropriated, and that the title of these filled lands on which Railroad street was established is in the city of Sandusky by grant from the state.
 

 We are of the opinion that the real issue in this case may be resolved by an examination and determination of the question whether the use complained of is contrary to the purpose of the dedication. It is to be observed that in the dedication there is no limitation upon the manner of the use by the public, nor of the means of communication or transportation thereover. It is essential, of
 
 *521
 
 course, under the terms of the dedication, that the use be for the benefit and accommodation of the public.
 

 The city of Sandusky holds these “open public slips” in trust for the purposes attached to the dedication thereof precisely the same as it holds the streets and other public grounds embraced in the certificate of dedication. By virtue of that dedication the fee of such parcels of land as are therein designated or intended for public use was vested “in the county in which the town lies for the uses and purposes therein named,” but by the Act of March 6, 1845, incorporating the city of Sandusky, “the title in fee of all streets, alleys, squares, market places, lanes, avenues, and all other public grounds within the boundaries of said town” was vested in the common council of San-dusky city “in trust for the uses and purposes specified in the record of said plat and no other.” Though the title to the public property within the bounds of the city which had been dedicated to public uses thus became vested in the city, it was, of course, subject to the limitations expressed in the dedication, and could be used only for the purposes contemplated thereby, and the city therefore took title subject to the limitations as to uses and purposes stated in the dedication.
 

 By virtue of the provisions of Section 3714, General Code, “the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within- the corporation” is expressly conferred upon the council of municipal corporations. In granting the right to construct the tracks in
 
 *522
 
 question in and over Railroad street the council of the city of Sandusky acted pursuant to the authority conferred by the statute, which was then Section 3283, Revised Statutes, now Section 8763, General Code, providing for the occupancy of a road, street, or ground of any kind upon agreement by the municipal corporation or public officers or authorities owning or having charge thereof and the company as to the manner, terms, and conditions of such occupancy.
 

 There is no room for disagreement upon the proposition that where property is dedicated to a public purpose generally it cannot be diverted therefrom and used for other public purposes, and further that where it has been dedicated for a public purpose therein specified, it cannot be used for purposes inconsistent therewith; nor can there be longer any doubt upon the further proposition that while neither the Legislature nor the municipality may authorize the use of property for a purpose other than such as contemplated by the dedication unless in the exercise of the power of eminent domain, yet the Legislature, or a municipality acting .under legislative authority, can apply the dedicated property to all public and beneficial purposes consistent with the terms and purposes of the dedication and regulate the public user. 18 Corpus Juris, 117;
 
 Langley
 
 v.
 
 Town of Gallipolis. 2
 
 Ohio St., 108;
 
 LeClercq
 
 v.
 
 Town of Gallipolis,
 
 7 Ohio, pt, 1., 217, 28 Am. Dec., 641;
 
 Board of Education of Van Wert
 
 v.
 
 Inhabitants of Said Town,
 
 18 Ohio St., 221, 98 Am. Dec., 114;
 
 Malone
 
 v.
 
 City of Toledo,
 
 28 Ohio St., 643;
 
 L. & N. Rd. Co.
 
 v.
 
 City of Cincinnati,
 
 76 Ohio St., 481, 81 N. E., 983.
 

 
 *523
 
 The provisions of the statute above referred to authorized .the proceeding, as a consequence of •which the track in question was constructed over Eailroad street, and it was regular and valid, and occupancy thereunder was lawful unless the proposed use of the so-called public slips was obnoxious to the purposes contemplated in the dedication thereof. In this consideration it must be assumed that these slips were land and extended northward to the water’s edge, and, in our consideration and disposition of the case, it may be conceded that the filling, whereby the various streets named were extended, had the effect of extending the public slips in question, and that the mere making of the fill thereof did not change the situation. In this connection the query may be suggested that if by reason of such filling these slips were not extended to the water, then the use for which they were dedicated might be deemed to have been abandoned, and a situation thereby created as a result of which a reverter of same could be claimed.
 

 What other use of these slips could have been contemplated by the dedicator than travel there-over to and from the water of Sandusky Bay? Clearly no other purpose could have been intended. If the laying of this track prevents the use of, and the open and public travel over, such so-called slips, then it would have the same effect if laid in any street, and would be such a diversion of the use thereof as to violate the terms of the dedication, for public streets are dedicated to ■ the use of the public only for the purpose of travel, and-cannot be used for purposes inconsistent therewith. Indeed, by the statute in effect at the time of this
 
 *524
 
 dedication, the title to all - public grounds, including streets therein platted, was conveyed only “in trust to, and for the use and purposes therein named, expressed or intended and for no other use or purpose whatever.”
 

 If, therefore, the laying of the track were held to be a violation of the terms of the dedication of a street, the statute permitting the laying of tracks for street cars or steam railroads in a public street would have no validity whatever. Clearly the general use and purpose of such slips was to reach the water’s edge in the same manner and by the same means contemplated in the use of streets. It may be said, however, as it was in the case of
 
 Hatch
 
 v.
 
 Cincinnati & Indiana Rd. Co.,
 
 18 Ohio St., 92, at page 121, that:
 

 “The general purposes to which the easement was and is applied are the same, to wit, the purposes of a public way, to facilitate the transportation of persons and property. Means and appliances are different, but the objects are similar.”
 

 The language used by Judge Wright in
 
 Malone
 
 v.
 
 City of Toledo, supra,
 
 at page 661, is pertinent:
 

 “Highways cannot be confined solely to the uses to which they were adapted in the primitive state of mankind.”
 

 Even at the early time when that decision was rendered it was said (page 656):
 

 “It is now every day’s experience that streets are used by railroads.”
 

 The public use must, of course, be dominant in the street and must continue to be so notwithstanding the construction of a railroad in or across it. Accordingly this court held in
 
 Lake Shore & M. S.
 
 
 *525
 

 Ry. Co.
 
 v.
 
 City of Elyria,,
 
 69 Ohio St., 414, 69 N. E., 738, that a municipal council did not have the power to grant a railway company the exclusive and permanent occupation of a public street; and if such condition were here presented the. decisions in that case, and the case of
 
 L. & N. Rd. Co. v. City of Cincinnati, supra,
 
 would be decisive of the question. But under the very provisions of the statute, as construed and applied in those decisions, the right to lay and maintain such track in a public street, where the dominancy of the public use is regarded, and where there is no attempt to permit the exclusive use and permanent obstruction of the street or any part thereof, is recognized, and the mere fact of the construction and maintenance of such track under the permission of and agreement with the city council, pursuant to the statute, particularly where it does not appear that the result thereof has been to prevent public travel thereover and the free access to the water, but on the contrary that the slips have remained open for the free and uninterrupted use of the public, and that such track does not interfere with or impair the use contemplated in the dedication, cannot warrant a decree of ouster such as prayed for.
 

 From the facts before us the conclusion is warranted that these slips and their extensions are now in effect streets to the water’s edge, and it does not appear that by the extension of those slips any right of the public has been invaded. The purpose that the public should have access to the water from the end of each of the north and south streets seems to have been fully observed, and no substantial interference therewith is manifested by the facts presented in the record.
 

 
 *526
 
 We concur in the suggestion that a situation thus existing for substantially 70 years should not be disturbed by a writ such as sought in this proceeding. The motion of relator for judgment on the pleadings is therefore overruled, and the writ denied.
 

 Writ denied.
 

 Marshall, C. J., Jones, Day, Allen, and Conn, JJ., concur.
 

 Robinson, J., not participating.