approval of *New Amsterdam Casualty Co.* v. *Johnson,. Admx.*

It should perhaps be noted that there is no requirement of external and violent means in the policy here under consideration, but there is the requirement of bodily injury effected solely by accidental means. There was no proof of external and violent means in this case and, therefore, no presumption arises that the means of injury was accidental. The burden of so proving was on the plaintiff and he was not aided by any presumption.

In the presence of these pronouncements by the Supreme Court, we find it unnecessary to inquire into the state of the law in other jurisdictions on the subject, or to resort to any original reasoning.

For these reasons, the judgment is reversed, and the cause remanded, with instructions to enter final judgment for the defendant.

*Judgment reversed.*

Ross, P. J., HILDEBRANT and MATTHEWS, JJ., concur in the syllabus, opinion and judgment.

McGILVERY ET AL., APPELLANTS, *v.* SHADEL ET AL., APPELLEES.

346

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

(No. 4390—Decided December 12, 1949.)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Messrs. DeMuth & Schneider,* for appellants.
*Mr. Joseph G. Gluck* and *Mr. M. M. Garfinkel,* for appellees.

CONN, J. This is an appeal by plaintiffs on questions of law and fact and was submitted on the pleadings, transcript of the docket and journal entries and evidence taken in the trial court, arguments and briefs of counsel. Upon the conclusion of plaintiffs' evidence, the trial court sustained the motion of defendants Elmer G. Shadel and Margaret Shadel for a judgment in their favor.

This is an action for specific performance of a contract for the purchase of a parcel of land on which a church building had been erected for religious service, such services having since been discontinued.

There are two issues raised by the pleadings and the evidence, to wit, (1) Was the agreement between the trustees and the defendants Shadel evidenced by a sufficient memorandum in writing, within the meaning of the statute of frauds?, and (2) Was this action begun in the names of the real parties in interest?

It is admitted in the answers of defendants Shadel that they are husband and wife; that the husband, Elmer G. Shadel, is the owner of the residuary estate in such real property; and that he has no interest in the building thereon.

The evidence shows that the church of the Evangeli-

cal Association was known as the Salem Church; that services were discontinued in that church in the summer of 1945; and that a short time prior to September 28, 1945, the president of the board of trustees went to the home of Elmer G. Shadel to inquire if he would buy the church building and, he not being interested. negotiations were then undertaken to buy the land.

The record does not disclose how many times the parties met in negotiating the sale and purchase of the land, but all the conferences were at the home of the Shadels except the last meeting, which was held in the post office in Whitehouse, Ohio, by prearrangement, at which time Elmer G. Shadel was paid $25 cash on the purchase price of the land, pursuant to the agreement, and for which he gave a receipt as follows:

"Sept. 28, 1945

"Received from Albert Weckerly twenty five dollars ($25), as part payment on two hundred and seventy five dollars $275, on church lot.

"Elmer G. Shadle."

The record discloses further that defendants Shadel were informed that the plaintiffs had purchased the church building and lot from the trustees, and that the deed for the land should be made to them. Subsequently, to wit, January 21, 1946, counsel for plaintiffs wrote a letter to defendant, Elmer G. Shadel, requesting that a deed be executed to plaintiffs. In reply to this letter, Mrs. Shadel wrote the following letter:

"Waterville, Ohio, Jan. 22

"Dear Sir:

"In regards to your letter. It is true that we sold the church ground to McGilvery and have receipt for $25.

"In going about to have a deed written up found that we only had 1/3 interest in it so put a hault [sic] on it.

"Now you realize how it stands, so we feel that we can do nothing about it unless the other airs [*sic*] sign off. We would be glad to return the $25.

"Yours truly
"Mr. and Mrs. Elmer Shadle."

On January 25, 1946, counsel for plaintiffs advised defendants Shadel by letter that he approved the title and would be "satisfied with a deed from Elmer G. Shadel and wife for the property." A warranty deed in due form, correctly describing the land, was prepared and sent to defendants Shadel and they were requested to sign same. This deed was returned unexecuted to plaintiffs' counsel, with the following letter:

"Waterville, Ohio, Feb. 1st, 1946.

"E. Donald Demuth:

"Dear Sir:

"I am very sorry to inform you that the property described in the warranty deed form which you enclosed in your letter; is not for sale. Margaret Shadle is not interested in selling the property; and will not sign legal papers for the sale thereof. Hoping this explains matters to your satisfaction.

"Thanking you for your trouble,
"Respectfully yours,
"Elmer G. Shadle."

Shortly thereafter, this action for specific performance was begun by plaintiffs.

The contention of defendants Shadel that there is no memorandum of the contract in writing within the meaning of the statute of frauds will be first considered.

It is apparent that the memorandum is something more than a receipt for the payment of money, as it is expressly stated therein that the $25 is "part payment on two hundred and seventy five dollars on church lot." This writing is in the handwriting of and is

signed by the owner of the land, who testified that he had in mind the ''Evangelical lot, Evangelical church lot'' when he ''wrote that.'' However, there are other writings ''signed by the party to be charged,'' as already referred to. In the letter written by Mrs. Shadel, she refers to the contract for the sale of ''the church ground to McGilvery'' and offered as an excuse for not furnishing a deed as requested the statement that they ''found that we only had 1/3 interest.'' Upon a deed being mailed to the Shadels in the usual form, with the description of the church lot by metes and bounds, Elmer G. Shadel wrote a letter returning the deed, stating therein that the property described in the warranty deed ''is not for sale, Margaret Shadel is not interested in selling the property and will not sign legal papers for the sale thereof.''

These writings, signed by the parties, together with the deed for the land, submitted by plaintiffs, wherein the ''church lot'' is fully described, refer to the same subject matter and are logically related to the agreement in point of time. When read together, they unmistakeably constitute ''some memorandum'' of the agreement and appear to satisfy the statute.

Early in Ohio, the Supreme Court in the case of *Thayer* v. *Luce,* 22 Ohio St., 62, held:

''Several writings, though made at different times, may be construed together, for the purpose of ascertaining the terms of a contract required, by the statute of frauds, to be in writing and signed by the party to be charged therewith.

''If some only of such writings be so signed, reference must be specifically made therein to those which are not so signed; but if each of the writings be so signed, such reference to the others need not be made, if, by inspection and comparison, it appear that they severally relate to or form part of the same transaction.''

See, also, 19 Ohio Jurisprudence, 603, Section 75; 49 American Jurisprudence, 695, Section 392; Restatement of the Law of Contracts, Section 208.

Defendants Shadel place much reliance on *Kling,. Admr.,* v. *Bordner,* 65 Ohio St., 86, 61 N. E., 148, and the much more recent case of *Schmidt* v. *Weston,* 150 Ohio St., 293, 82 N. E. (2d), 284. We wish to call particular attention to the issues in those cases. In the *Kling* case the action was predicated on a letter written to plaintiff by her son at the request of plaintiff's sister, who was ill and in need of care. The letter expressly stated that "if you come and stay with her, after her death all that is left after her debts and funeral expenses are paid shall be yours." Plaintiff prayed for the amount of the net estate and upon trial recovered judgment for the amount prayed for. Following the verdict, plaintiff obtained leave to file an amended petition setting up a second cause of action on a verbal contract entered into a few days later than the one set up in her original petition, but creating the same obligation. The Supreme Court construed those contracts as agreements concerning an estate in lands, as the estate consisted principally of real property.

It is pointed out in the opinion that the letter did not contain a promise to plaintiff "to transfer to her by any mode of conveyance the defendant's estate or any part of it that is capable of identification," particular reference being made to that portion of the letter referred to above.

The court held that the agreement was within the statute and the part performance relied on was insufficient, and that plaintiff's remedy would be to seek to recover the value of her services. From the foregoing recital, it is apparent that the facts in the *Kling* case are substantially dissimilar to the facts in the instant case.

The *Schmidt case* was an action for specific performance of a contract for the sale of land, and the question in that case was whether parol evidence could ''be received to correct a discrepancy in the description of the land.'' The property was described as ''premises owned by H. C. Weston located in West Richfield twp.,'' but there was no such township. The court noted in its opinion that there was no attempt to reform the contract before that action was begun. The court held that ''the description must be in itself capable of application to something definite before parol testimony can be admitted to identify any property as the language described,'' and that the memorandum was insufficient under the statute.

In the instant case, the property is identified and accurately described, as shown by competent evidence in writing.

It is pertinent to this discussion to call attention to the established rule in Ohio that the syllabus of a case decided by the Supreme Court of Ohio states the law of that particular case. This rule was adopted in 1858. 5 Ohio St., v; 94 Ohio St., ix, and reporter's note.

It may be observed further that the rule of law stated in the syllabus of a case decided by the Supreme Court, or where reliance is placed on language found in the court's opinion, the law thus announced may not be subsequently applied and construed beyond the area limited by the particular facts in each case. *Baltimore & Ohio Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233; *Leube* v. *Prudential Ins. Co.,* 147 Ohio St., 450, 456; 72 N. E. (2d), 76; *Ward* v. *Bickerstaff,* 79 Ohio App., 362, 365, 73 N. E. (2d), 877.

It is claimed further by defendants Shadel that plaintiffs are not the real parties in interest, and that there is no privity of contract between plaintiffs and

defendants. On the record before us, the contention is not well founded. Competent evidence was offered to the effect that defendants Shadel were informed that plaintiffs were purchasing the church lot and building, and it is easily inferable from the record that it was the understanding between the parties that the deed for the lot would be made directly to the plaintiffs. This conclusion is confirmed by the documentary evidence.

It appears also that when the deed to plaintiffs was submitted to the owners for execution, or at any other time, no objection was made as to the manner of conveyance. That plaintiffs are the real parties in interest is further shown by the cash payment for the property, the making of substantial improvements by plaintiffs and their possession of the property since March 1946.

Judgment is awarded for plaintiffs as prayed for.

*Judgment accordingly.*

CARPENTER and FESS, JJ., concur.