ZETZER, APPELLEE, *v.* LUNDGARD ET AL., APPELLANTS.

(No. 264—Decided February 5, 1953.)

*Mr. U. G. Denman,* for appellee.
*Messrs. True & Meyer,* for appellants.

CONN, J.   This appeal to this court is on questions of law and fact and is submitted on the pleadings, the original papers, a transcript of the docket and journal entries and, also, a transcript of the evidence offered by plaintiff, the exhibits, and the oral arguments and briefs of counsel.

An amendment to plaintiff's second amended petition was filed in this court and defendants filed herein their amended answer, to which plaintiff filed a reply.

Plaintiff's second amended petition is voluminous

and somewhat repititious. In their amended answer, defendants allege that plaintiff does not have the legal capacity to sue, either as an individual or as a tax-payer, and that plaintiff has been guilty of laches. Defendants deny that Perry street between Monroe and Jackson streets was ever dedicated as a street. The amended answer of defendants contains further a series of specific admissions, affirmative averments and denials, and a general denial. What is admitted and what is denied is not clearly disclosed on the face of the pleading. The reply of plaintiff also contains specific denials, a general denial, and some affirmative allegations.

Section 11305, General Code, in mandatory form, provides that the facts constituting a cause of action shall be stated in ''ordinary and concise language.'' A similar provision is found in Section 11314, General Code, defining what the ''answer shall contain,'' and expressly providing that each material allegation in the petition shall be controverted by a general or special denial. New matter in the answer may be generally or specifically denied in the reply and new matter may be pleaded in ''ordinary and concise language.'' Section 11326, General Code.

An issue of fact arises when a material allegation in a pleading is denied, either generally or specifically. Section 11378, General Code. The issues raised by the pleadings in the instant case are confused, and such confusion has materially added to the labors of counsel in the trial of this case. Furthermore, a laborious task has been imposed on the court to ferret out and adjudicate the issues that are presented by the record in this case.

The indiscriminate intermingling of new matter, general denials, and specific denials in a pleading with no apparent attention to the order in which they are

set forth is confusing. Furthermore, such method of pleading does not appear to be authorized by the Code and is not approved.

On the evidence submitted, including the exhibits and the pleadings, as we interpret them, there appears to be no dispute on the material facts in this cause.

The record discloses that in the year 1828, one E. S. Haines subdivided a tract of land owned by him at the mouth of the Portage river and extending along the shore of Lake Erie, and located in what later became a part of Ottawa county. This subdivision was named Town Plat of Port Clinton. This plat was later received for record and recorded on August 17, 1831. It does not appear that this town plat was surveyed by the county surveyor as provided for in "An Act to Provide for the Recording of Town Plats" (29 Ohio Laws, 350), effective June 1, 1831, and which was in force at the time such plat was received for record. The plat describes and locates the streets, alleys, commons or public grounds and lots, numbered consecutively by the squares in which they are situated.

Among the streets shown on the plat is Perry street, extending westerly from Fulton street on the east to Canal street (now Harrison street) on the west. This street is 100 feet wide and is the first principal street south of the southern shore of the Portage river and Lake Erie. Attention will be called to this street later in this opinion, and also to Monroe street, which is a north and south street in the westerly part of Port Clinton and which intersects Perry street. This street is in two parts. North of Perry street it is 66 feet wide and south thereof is "upper market space," 166 feet wide, extending south to Third street. The south part of Monroe street is 66 feet wide, and extends south from Third street. The next street west of Monroe street and parallel to it, which intersects Perry street,

is Jackson street, and the next street west therefrom is designated on the plat as Canal street. Canal street runs north and south on the west boundary of the town.

Section 8 of the act above referred to (29 Ohio Laws, 350, 351), provides:

"That the plat or map, when recorded, as required by this act, shall be deemed and considered in law, a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed, named or intended for public use, in the county in which the town is situated, for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever."

Upon this review of the steps taken by the owner of the land to lay out the "Town Plat of Port Clinton," including the subdivision of the land into lots, with streets (including Perry street), alleys, public grounds as shown on the plat, all in substantial compliance with the statute making provision for same; the subsequent recording of town plats; and the facts that subsequently the lots shown on the plat have been sold and conveyances made, and streets improved so that today a beautiful city has been built upon the plan so made, there clearly appears a complete answer to the claim of defendants that Perry street was not originally dedicated in its entirety to public use. It can not be inferred from the record that the physical characteristics of the land as to that part of Perry street in question could not at any time have been improved for general street purposes. It was at all times within the sound discretion of the council to determine whether or not such improvement should be made.

Even if on the record no statutory dedication is shown, a valid dedication would result under the common law, as the intention of the owner to make such

dedication clearly appears, as well as the acceptance of the dedication by the community and the establishments of the village on the land as dedicated. *Village of Hicksville* v. *Lantz,* 153 Ohio St., 421, 92 N. E. (2d), 270; *Scott* v. *Snyder,* 73 Ohio App., 424, 54 N. E. (2d), 157; 13 Ohio Jurisprudence, 738, Section 17.

It was stipulated by the parties that on May 13, 1853, the council of the village of Port Clinton, by ordinance, granted an easement of way to the Port Clinton Railroad Company for the location and construction of its railroad through and across any public street, alley, etc. in the village, and that such railroad was the first predecessor of the New York Central Railroad Company. The record discloses that the easement granted for railroad purposes was 66 feet wide, extending across Perry street in a northwesterly and southeasterly direction, between upper market space (hereinafter referred to as Monroe street) on the east and Jackson street on the west. It was stipulated also that neither the New York Central Railroad Company nor any of its predecessors had an interest of any kind in any part of Perry street prior to August 17, 1831.

The record shows that Perry street between Monroe and Jackson streets was never improved or opened to public travel; that there is some conflict in the evidence as to the physical character of Perry street at this point, but it appears that this part of the street was low and wet; that west of the railroad right-of-way the street was marsh and water; that the railroad company made an extensive fill on its right of way; and that the remainder of Perry street west from the east line of Jackson street to Canal street and that portion from the west line of Monroe street east to Fulton street has been improved for general street purposes.

It is disclosed further that in 1883 the council of

Port Clinton, upon petition, passed an ordinance vacating that part of Perry street lying between the west line of Monroe street (extended to the south line of Perry street) on the east and the east line of the right of way of The Lake Shore & Michigan Southern Railroad; that, thereupon, a warehouse was constructed on a portion of that part of said street so vacated; that subsequently, in the year 1930, the defendant John Lundgard brought an action in the Court of Common Pleas of Ottawa County (cause No. 8712) against the village of Port Clinton to quiet the title to that part of Perry street which was vacated by ordinance in 1883; that the court, in construing the ordinance of 1883, adjudged that it was the intention of the village council to vacate that portion of Perry street as above described; and that plaintiff had obtained title by adverse possession to that part of Perry street which had been vacated, excepting such portion as lies east of the east line of plaintiff's warehouse.

The record discloses further that the council of Port Clinton in the year 1931 determined that in order to make desired improvements to Monroe street it was necessary to move the warehouse of defendant westerly and relocate it on a new foundation west of the west line of west market space. The mayor and clerk were authorized by council to receive bids and enter into a contract with the lowest bidder for the moving of the building, pursuant to an agreement with said defendant so to do, without cost and expense to such defendant, and said warehouse was moved accordingly. Defendants have made further improvements on the vacated portion of Perry street.

It is disclosed further by the pleadings and the evidence that on March 22, 1932, the council of Port Clinton passed ordinance No. 188, vacating that part of Perry street from the west line of Monroe street to

the west line of the New York Central Railroad Company's right of way. It is apparent that this ordinance included that part of Perry street vacated by ordinance of 1883, above referred to. The property to be vacated as described in the published notice was limited to that part of Perry street formerly occupied by the railroad as a right of way. It is difficult to see how this discrepancy could be prejudicial.

This action was brought by plaintiff as a taxpayer on behalf of the village (now city) of Port Clinton, himself and other taxpayers. Defendants challenge the capacity of plaintiff to sue and maintain the action. It appears to be well settled in Ohio that a nonabutting property owner can not maintain an action for damages that grew out of the obstruction or vacation of a street or highway, unless the injury sustained is different in kind, and not merely in degree, from that sustained by the community in general. *New York, Chicago & St. Louis Rd. Co.* v. *Bucsi,* 128 Ohio St., 134, 190 N. E., 562, 93 A. L. R., 632; *Worthington* v. *City of Akron,* 18 C. C. (N. S.), 208, 32 C. D., 695; *Fischer, a Taxpayer,* v. *City of Cleveland,* 42 Ohio App., 75, 83, 181 N. E., 668; *Paysen* v. *New York Central Rd. Co.,* 53 Ohio App., 154, 4 N. E. (2d), 596; 28 Ohio Jurisprudence, 539, Section 339.

In this action, plaintiff prays for equitable relief by way of a judgment setting aside the proceedings of council upon a finding same were null and void, that no part of Perry street had been vacated, and that defendants be ordered to remove their buildings therefrom. The right to the relief prayed for is grounded on certain alleged illegal acts of council which it is claimed operated as constructive fraud and now fraudulently affect the city of Port Clinton and its citizens. The issues thus raised are readily differentiated from those raised in actions by nonabutting property owners for damages claimed to have been

sustained upon the vacation or obstruction of a street.

Actions for injunction to enjoin the attempted vacation of streets are also distinguishable. Such actions are not maintainable where it appears that plaintiff has reasonable access to his property by other streets or where he has not suffered damages differing in kind from the general public. *Kinnear Mfg. Co.* v. *Beatty,* 65 Ohio St., 264, 62 N. E., 341, 87 Am. St. Rep., 600; *Bulen* v. *Moody,* 77 Ohio App., 61, 63 N. E. (2d), 916.

In view of the fact that plaintiff's action rests on alleged illegal acts of council, which are alleged to have been constructively fraudulent on the village and citizens generally, we have reached the conclusion that plaintiff, as a taxpayer, has the capacity to bring this action.

We now come to the crucial and decisive issue raised on the pleadings. This issue may be stated briefly as follows: Were the acts and things done by the council of the village of Port Clinton since its incorporation, in relation to that part of Perry street under consideration, within the lawful exercise of its power and authority? It is a general rule that the procedure for the vacation or alteration of a street, to be effective, must be in substantial compliance with the statute prescribing such procedure. 175 A. L. R., 762.

However, plaintiff has not claimed in this court that the several acts of council were void by reason of noncompliance with the statute, but does claim that the action taken was wholly without legal authority and, therefore, void and constructively fraudulent. This claim is grounded on the proposition that the Plat of the Town of Port Clinton was laid out by the owner of the land "just out in the country," and not as an addition to a municipality; and that the streets, alleys and areas "intended for public use" were dedicated

pursuant to the statute (29 Ohio Laws, 350, 351), and particularly with section 8 thereof, "for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatsoever."

On this premise it is urged by plaintiff with much emphasis that the several acts of council from the time of the incorporation of the village in 1852 to and including the contract with defendant, John Lundgard, the objective of which was the relocation of defendant's warehouse in order to make certain improvements in Monroe street, were a nullity and without legal force or effect; that, as a necessary conclusion, the actions taken by council can not defeat the right of taxpayers at this time; and that, as to them, the judgment in the quiet title action (No. 8712) is not *res judicata.* These several contentions may have the apparent virtue of logic, but we have concluded that they are not grounded on an acceptable premise.

The briefs of counsel cover a wide range and contain numerous citations. As this opinion has already exceeded the objective of brevity and conciseness, we cannot undertake to analyze all the cases relied on by plaintiff.

Attention is first called to the act providing for the organization of cities and villages, enacted May 3, 1852 (50 Ohio Laws, 223, Swan & Critchfield, 1493), and amended by an act enacted March 11, 1853 (51 Ohio Laws, 360, 366, Swan & Critchfield, 1530), and particularly to the language of section 13 of the amending act, conferring authority on council in the matter of vacating streets:

"* * * Upon hearing and being satisfied that there is good cause for such vacation * * * and [that] it will not be detrimental to the general interests, and that the same should be made, declare such street or streets * * * vacated * * *."

The original enactment has been amended through the years, but in each of the amendments, revisions, and codifications, the discretionary power originally conferred on council has been retained and is now found substantially in the present statute. Section 3725, General Code.

Plaintiff relies on the case of *Louisville & Nashville Rd. Co.* v. *City of Cincinnati,* 76 Ohio St., 481, 81 N. E., 983. In that case the court reviewed an ordinance of the city of Cincinnati which attempted to grant to the railroad the right to construct an elevated railroad over and across certain streets and land ''set apart as a common for the use and benefit of the town forever,'' lying between Front street and the Ohio river. This dedication was made by the owners of the tract in 1789. The ordinance was declared invalid on the ground that the Legislature could not ''authorize a municipality to grant to a railroad company the right to occupy a public common or landing with an elevated railroad.'' It is apparent that the primary issue considered by the court related to the legality of the grant to the railroad company to occupy the public common or landing. This fact stands out in the closing language of Judge Summers' opinion, which we quote:

''It does appear, and that without the need of any testimony of expert witnesses, or any finding of facts, that this elevated railroad was to be constructed over the entire length of the landing, not for the purpose of facilitating the use of the landing for the purpose for which it had been dedicated, but for the use of the railroad company. The occupancy of this part of the land in the manner proposed would be in effect an appropriation of it by the railroad company, and the grant is inconsistent with and a diversion from the use for which the land was dedicated.''

Under the rule established by the Supreme Court

nearly 100 years ago, the syllabus of the points decided must be construed and applied in the light of the facts of that particular case. See 11 Ohio Jurisprudence, 798, Section 145; *McGilvery* v. *Shadel,* 87 Ohio App., 345, 351, 95 N. E. (2d), 1, and cases cited.

When *Louisville & Nashville Rd. Co.* v. *Cincinnati, supra,* is "shepardized," the number of citations is impressive. Many of those cases are cited by plaintiff, which he contends have followed *Louisville & Nashville Rd. Co.* v. *Cincinnati.* There is language found in several of the opinions in the cases cited that lend some encouragement to plaintiff. However, from our examination of the cases relied on, it appears that they cover a wide and diversified range of facts and that in none of them has the court applied the law of that case to a factual situation substantially like the case presented on the record before us. It is for this reason that the cases relied on do not come within the doctrine of *stare decisis* and do not govern the disposition of the issues in the instant case. Furthermore, plaintiff has failed to show that the proceedings of council were illegal or fraudulent.

It should be noted that the facts embraced in this controversy cover a period of time exceeding 100 years. The acts and things done by the council were not put under a bushel basket, but were performed in the open and are evidenced by public records. Consistent with the concluding thought expressed in the opinion of Judge Matthias in the case of *State, ex rel. Crabbe, Atty. Genl.,* v. *Sandusky, Mansfield & Newark Rd. Co.,* 111 Ohio St., 512, 526, 146 N. E., 58, the situation now presented should not be disturbed.

Plaintiff seeks an equitable remedy. His claims are subject to the affirmative defenses of laches and estoppel and the further equitable right of compensation to the defendants as a condition precedent to a manda-

tory order being entered depriving them of their property.

It would serve no good purpose to extend further the basis upon which our opinion rests. Our conclusion is that there should be a finding and judgment for defendants.

*Judgment for defendants.*

FESS and SAVORD, JJ., concur.