HUGGER, APPELLANT, *v.* CITY OF IRONTON ET AL.,
APPELLEES.

(No. 765—Decided August 12, 1947.)

*Messrs. Pratt & Crowe,* for appellant.
*Mr. A. J. Layne* and *Mr. F. A. Ross,* for appellees.

METCALF, J.   The city of Ironton, having a "city manager plan" of government, by ordinance duly adopted, sold, executed and delivered to the United States Department of Agriculture, Forestry Service, an 8.4-acre tract of unimproved land for the nominal sum of $10.   In addition to the consideration mentioned in the deed, it is claimed by the city, as shown

by the record, that the purchaser is to furnish fire protection to a large area of forest land adjacent to and within the corporate limits of the city. And there is the further consideration that a building is to be erected on the premises sold of approximately the value or expenditure of $25,000.

The plaintiff in the instant case, by way of amended petition, alleges that the defendant, the city of Ironton, by such act, violated Section 3699, General Code, and its kindred sections. Section 3698, General Code, authorizes municipalities to sell or lease real property not needed for any municipal purpose.

Section 3699, General Code, reads as follows:

"No contract for the sale or lease of real estate shall be made unless authorized by an ordinance, approved by the votes of two-thirds of all members elected to the council, and by the board or officer having supervision or management of such real estate. When such contract is so authorized, it shall be made in writing by the board or officer having such supervision or management and only with the highest bidder, after advertisement once a week for five consecutive weeks in a newspaper of general circulation within the corporation. Such board or officer may reject any or all bids and re-advertise until all such real estate is sold or leased."

It is plaintiff's contention that the deed executed in conformity with the action of council is null and void, and is a cloud on the title of the real estate, and he asks that the same be declared null and void and that certain defendants, the county auditor and county recorder, be enjoined from transferring and recording the deed of conveyance.

All the defendants answered, except the United States Department of Agriculture, Forestry Service,

admitting all the pertinent facts alleged in the amended petition except the claim that the ordinance authorizing the execution and delivery of the deed was unauthorized by law. The city sets up its claim to a further consideration as hereinabove noted in addition to the nominal sum set forth in the deed and alleges further that the real estate is not needed for municipal purposes. Plaintiff's reply to this answer denies all facts alleged that are not admissions of the allegations in the amended petition.

On the issues joined, trial was had and the Common Pleas Court found in favor of the defendants, and dismissed plaintiff's petition, from which judgment plaintiff appeals to this court on questions of law and fact.

While it is not necessary to the disposition of the case before us, perhaps it is well to state that, prior to the sale out of which this action grew, the city of Ironton did by ordinance and by advertising offer the tract for sale as provided by Section 3699, General Code, hereinabove set out and that when the bids were opened it was found that the United States Department of Agriculture, Forestry Service, had bid the sum of $5 and that plaintiff herein had bid the sum of $1,500 for the tract of land in question and thereupon the city rejected both bids.

Both sides to this controversy rely upon Section 3 of Article XVIII of the Constitution of Ohio, adopted in 1912, and known as part of the home-rule amendment. That section of the constitution reads:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Plaintiff urges that to permit the city of Ironton to sell and convey real estate without complying with Section 3699, General Code, *supra,* is in direct violation of the home-rule amendment hereinabove quoted in that the ordinance permitting the sale in the instant case is in conflict with general laws. The city on the other hand maintains that, since the adoption of the home-rule amendment, Ironton not being a charter city which has adopted the general laws of the state as a part of its charter, it has full power to exercise all powers of local self-government and that the sale of the real estate is in no way in conflict with the general laws of Ohio.

As was pointed out by the trial court in the instant case and held in many cases, Section 3 of Article XVIII consists of two sentences, the first of which gives to municipalities all powers of local self-government without any qualifications or reservations. The second sentence authorizes municipalities to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws. In other words, the qualification as to any regulation not being in conflict with general laws applies only to the adoption and enforcement of local police, sanitary and other similar regulations. It follows that the sale of real estate by a municipal corporation, not being the adoption or enforcement of any act connected with local police, sanitary and other similar regulations, is a proper exercise of the power of local self-government granted by the home-rule amendment of the Constitution of the state of Ohio. The fact that part of the consideration claimed by the city is the assistance of the forestry service in fire prevention does not bring the action of the city council within the regulation of local police power or other regulations mentioned in the second

sentence of Section 3, Article XVIII, *supra*. Prior to the adoption of this amendment it was imperative that a city in disposing of real property comply strictly with the General Code as announced in Sections 3698 and 3699, *supra,* and the prior enactments because it was from the Legislature only that a city derived its power to sell real property. Since the adoption of the amendment, however, a city which has not made the provisions of the General Code a part of its basic law, by way of charter or otherwise, is not compelled to follow those sections of the General Code.

Plaintiff urges that the case of *State, ex rel. Zielonka,* v. *Carrel,* 103 Ohio St., 50, 132 N. E., 161, is decisive of the issue in this case because there the city of Cincinnati, a charter city, had followed Sections 3698 and 3699, General Code, in disposing of certain real estate. An examination of that case shows that the only question before the court was as to the right of the city to pay an auctioneer for crying the sale and the court held it did not have such right for the reason that a public official was duly charged with that duty. The city of Cincinnati followed the above sections of the General Code because its charter, in force and effect at that time, adopted the general and all local or special laws enacted by the General Assembly of the state of Ohio, then in force relating to the organization of municipal governments not otherwise in its charter provided.

The supplemental brief filed by counsel for plaintiff urges that the provision can have no force and effect because the power of municipalities as to local self-government stems directly from the Constitution and is a continual flow of power and cannot be limited by the people of the city at one moment as against the future actions of any council. The obvious answer to this is that if a city, having a charter that has adopted the general and special laws of the state respecting

municipalities as a part of the basic law of the city, at some future time desires to exercise this continual flow of power from the Constitution, all the city has to do is to amend its charter in that respect. See Section 7, Article XVIII of the Ohio Constitution.

It is necessary to keep in mind that the city of Ironton has a city manager form of government, a plan of government provided for in Section [3515-19], General Code. Since, as we have pointed out, the sale of the property in question is in no way connected with local police, sanitary or other similar regulations and therefore not restricted by Section 3, Article XVIII of the Ohio Constitution as being in conflict with general laws, and since this sale is not prohibited or limited by Section 13, Article XVIII of the Ohio Constitution, because it is in no way an attempt to levy taxes and incur debts for local purposes or an attempt to circumvent any of the other limitations therein contained, it then would seem to confine our question solely to one as to whether the action taken by the council involves a local matter. It is true plaintiff urges that the result of the action will involve taxation, the contracting of debts etc., yet that possibility is not tenable. Any action of the city council might lead to the expenditure of money thereby depleting the treasury of the city which in turn might require the raising and expenditure of further taxes. But that is quite another thing than taxation, assessment, borrowing money or contracting debts.

As to the local aspect of the issues involved here, we call attention to the case of *Fitzgerald* v. *City of Cleveland,* 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106, a case decided less than one year (August 26, 1913) after the adoption of the home-rule amendment (September 3, 1912). The court in that case, with the proceedings and actions of the constitutional con-

vention of 1912 still very much alive, discusses Section 3, Article XVIII in the light of the intent and purposes of the convention to bestow upon cities home rule. There are many timely illustrations given throughout the 64 pages of the opinion of the court, the concurring and dissenting opinions in that case. In discussing Section 3, Judge Wanamaker says on page 362 that "this is the cornerstone of home rule for Ohio cities." He then proceeds to show the fallacy of in any way trying to claim that the first sentence of this section is limited in any degree by the restriction placed upon the second sentence by the phrase "conflict with general laws." On page 365 appears this language:

"The first half relates wholly to municipal power. The last half relates wholly to state power. The first half is as unlimited as the second half is limited. The second half could not possibly relate to municipal power, because the first half is as comprehensive as a grant of power could be and therefore no addition could be made to it.

"If it be claimed that 'not in conflict with general laws' as found in the second half modifies also the first half, then it must follow that all municipalities are as absolutely under the control and domination of the state Legislature today as they were before the adoption of the home-rule amendment, *because all general laws now on the statute books would be preserved, and future legislatures might proceed with municipal legislation at their pleasure. Home rule would be but an empty eggshell, a mere snare and ideality."* (Emphasis ours.)

It seems to this court that to hold it is imperative for the defendants here to follow Sections 3698 and 3699, General Code, which in substantially their pres-

ent form were enacted long years before the constitutional convention of 1912, would be tantamount to annulling the home-rule amendment by saying that the Legislature still has direct control of municipalities in purely local matters.

We find on page 578 of the opinion in the case of *State, ex rel. Arey,* v. *Sherrill, City Manager,* 142 Ohio St., 574, 53 N. E. (2d), 501, the Supreme Court, speaking through Judge Bell, saying: "The word *local* as used in that provision of the Constitution (Section 3, Article XVIII) has a definite meaning. The phrase 'all powers of *local* self-government' as used therein, means the power of self-government in all matters of a purely local nature." The court then proceeds to outline what in its opinion are not local matters. The *Sherrill case,* in the opinion of this court, is sufficient authority for holding that the sale in the instant case is a local matter with which only the city of Ironton is concerned.

As to whether the city here acted arbitrarily and with abuse of discretion in selling the property in question for $10 when it could have obtained the sum of $1,500 therefor from plaintiff we call attention to the case of *Green* v. *Thomas,* 37 Ohio App., 489, 175 N. E., 226. That case grew out of the purchase by the state of Ohio of the site or part thereof on which the new state office building now stands in Columbus and there the court reviews the evidence and enumerates the benefits accruing to the city of Columbus as a part or most of the consideration for the land conveyed.

While the *Green* v. *Thomas case* cannot be used as authority for not following Section 3699, General Code, by reason of there having been a special legislative act providing for the acquisition of the site for the new state office building yet it does shed a great deal of light on the intent and purpose of the transaction in

the instant case and certainly is decisive as to whether the benefits accruing to the city of Ironton by the sale of the real estate in question are adequate in view of the higher offer in money by plaintiff. The first paragraph of the syllabus of that case reads:

"1. Transfer of site for office building by city of Columbus to state, in consideration of benefits derived by city, *held* neither 'sale' nor 'donation'; hence statutes were inapplicable (Sections 3631, 3698 and 3699, General Code; 113 Ohio Laws, 58, Section 3)."

The seventh paragraph of the syllabus reads:

"7. City of Columbus may transfer to state site for state office building for consideration other than money * * *."

The court, starting on page 497, discusses the adequacy of the consideration moving to the city of Columbus and quotes from the record as to the testimony offered on this phase. It seems to this court that, reasoning from the *Green case,* it can be readily seen that no other city in Ohio has any interest whatsoever in what the city of Ironton does with the land here in question and further that the benefits to be derived as taken from the testimony in the instant case are as peculiar to the city of Ironton as the improvement of the site for the state office building in Columbus was to that city and therefore there can be no conflict with the general laws of Ohio.

In 38 American Jurisprudence, 167, Section 487, we find this statement:

"The advantage which will inure to the municipality from a contemplated improvement may constitute a valuable consideration for a deed from the municipality to the state or the United States."

In the case of *Stanley* v. *Schwalby,* 162 U. S., 255, 40 L. Ed., 960, 16 S. Ct., 754, the Supreme Court of the United States, at page 276, said:

"A valuable consideration may be other than the actual payment of money, and may consist of acts to be done after the conveyance. * * * The advantage enuring to 'the city of San Antonio from the establishment of the military headquarters there was clearly a valuable consideration for the deed of the city to the United States.''

There is a long line of other decisions to the same effect which substantiate the claim of the city of Ironton that the consideration of fire protection and the erection of the building on the property sold is far greater to the city and its inhabitants than the $1,500 offered by plaintiff. Under such circumstances it cannot be said that the city acted arbitrarily or with abuse of discretion or with fraud or deceit or in any way evaded the public responsibility it owed its citizens in transferring the real property in question to the Department of Agriculture, Forestry Service.

The circumstances surrounding the transaction in the instant case illustrate the wisdom of granting to municipalities the right to exercise all powers of local self-government. In this day and age, when all cities and municipalities are more or less competing in obtaining for their inhabitants various industries, institutions and civic improvements, many times it becomes necessary to convey property not needed for municipal purposes in exchange for these various benefits. If the constitutional provision is to be ignored and cities are to be bound by the old statutory provisions of advertising and accepting the highest bid there will always be those willing and ready to pay more in cash than the city will be able to receive if the other benefits are to be ignored. The free and untrampled growth of a municipality, both civic and industrially, demands that a city have wide freedom of choice in matters of this kind. This the makers of the

Constitution of 1912 recognized when they granted to municipalities powers of local self-government.

It is the holding of this court that the city of Ironton under its form of government is authorized and empowered by virtue of Section 3, Article XVIII of the Constitution of the state of Ohio to dispose of the real property in question in the manner and by the procedure followed and that therefore the prayer of plaintiff's amended petition will be denied, the same dismissed and judgment entered for defendants.

*Judgment accordingly.*