Stewart, J.
The first ground upon which respondent relies in support of his demurrer is that the ordinance in question fails to comply or show compliance with the Ohio statutes requiring competitive bidding for a sale or lease of real property owned by a municipal corporation.
Section 1 of the Columbus Charter reads in part as follows:
“ * * * the city * * * * shall have all powers that now are, or hereafter may be granted to municipalities by the Constitution or laws of Ohio; and all such powers whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council. In the absence of such provision as to any power, such power shall be exercised in the manner now or hereafter prescribed by the general laws of the state applicable to municipalities.” (Emphasis added.)
Section 2 of the charter reads as follows:
“The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof the city shall have, and may exercise all other powers which, under the Constitution and laws of Ohio, it would be competent for this charter specifically to enumerate. ’ ’ Section 3 of the charter reads as follows:
‘ ‘ The legislative power of the city, except as reserved to the people by this charter, shall be vested in a council, consisting of seven members, elected at large.”
Section 232 of the charter reads as follows:
“All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city, provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict *546 with, the Constitution of the state or with the express provisions of this charter.” (Emphasis added.)
Assuredly, the above sections give full authority to the city council to enact ordinance No. 546-58, unless a sale of real estate by a municipality is not a proper exercise of local self-government granted by Section 3, Article XVIII of the Constitution.
It is true that Sections 721.01 and 721.03, Bevised Code, govern the sale or lease of municipal property, and that Section 721.03 requires that a contract for such sale or lease must be aúthorized by an ordinance approved by a two-thirds vote of the members of the legislative authority of the municipal corporation and by the board or officer having the supervision or management of the property, and that such contract must be made with only the highest bidder, after advertisement once a week for five consecutive weeks in a newspaper of general circulation within the municipal corporation.
Obviously these provisions of Section 721.03 were not followed in reference to the lease under discussion here, and, in our opinion, it was not necessary that they be so followed.
Municipalities, which, under their charters, have full power to exercise local self-government, may convey property without resort to the exactions required by state statutes.
In the case of Babin v. City of Ashland, 160 Ohio St., 328, 116 N. E. (2d), 580, in paragraph six of the syllabus, this court held as follows:
“The power to convey property owned by a municipal corporation and no longer needed by it for municipal purposes is included within the powers of local self-government conferred by Article XVTII of the Ohio Constitution * * *.”
A logical presentation of the problem involved here was made in the case of Hugger v. City of Ironton, 83 Ohio App., 21, at pages 30 and 31, 82 N. E. (2d), 118, wherein the court stated:
“The circumstances surrounding the transaction in the instant case illustrate the wisdom of granting to municipalities the right to exercise all powers of local self-government. In this day and age, when all cities and municipalities are more or less competing in obtaining for their inhabitants various industries, institutions and civic improvements, many times it becomes *547 necessary to convey property not needed for municipal purposes in exchange for these various benefits. If the constitutional provision is to be ignored and cities are to be bound by the old statutory provisions of advertising and accepting the highest bid there will always be those willing and ready to pay more in cash than the city will be able to receive if the other benefits are to be ignored. The free and untrampled growth of a municipality, both civic and industrially, demands that a city have wide freedom of choice in matters of this kind. This the makers of the Constitution of 1912 recognized when they granted to municipalities powers of local self-government.
“It is the holding of this court that the city of Ironton under its form of government is authorized and empowered by virtue of Section 3, Article XVIII of the Constitution of the state of Ohio, to dispose of the real property in question in the manner and by the procedure followed and that therefore -the prayer of plaintiff’s amended petition will be denied, the same dismissed and judgment entered for defendants. ’ ’
The appeal from the judgment of the Court of Appeals in the above case was dismissed by this court in Hugger v. City of Ironton, 148 Ohio St., 670, 76 N. E. (2d), 397, and, although such dismissal does not establish a precedent, the reasoning of the Court of Appeals as indicated by the above quotation so clearly expresses the opinion of this court that we do not hesitate to adopt it. It seems to us that the lease with which we are now concerned, which deals with a lot owned by the city of Columbus, presents only a local problem, and that, therefore, the provisions of Sections 721.01 and 721.03, Revised Code, have no application.
The next contention made by respondent in support of his demurrer is that the direction given him to execute the lease authorized by ordinance No. 546-58 represents an unlawful interference with the administrative function and more particularly with the discretion given to him by the statutes of Ohio and the Charter of Columbus in his capacity as Director of Public Service of the city.
Respondent relies upon Section 731.05, Revised Code, and Sections 3, 57 and 115 of the Columbus Charter. Although Section 731.05, Revised Code, provides that the powers of the *548 legislative authority of the city shall be legislative only, and that such authority shall perform no administrative duties, such section provides further that “all contracts requiring the authority of the legislative authority for their execution shall be entered into and conducted to performance by the board or officers having charge of the matters to which they relate.”
Section 3 of the Columbus Charter provides simply that the legislative power of the city shall be vested in a council, and section 57 thereof provides that the executive and administrative powers shall be vested in the mayor, directors of departments, and other administrative officers or boards provided for in the charter or by ordinance.
Section 115 of the charter outlines the powers and duties of the Director of Public Service as follows:
“The Director of Public Service shall have charge of the construction, improvement, repair and maintenance of streets, sidewalks, alleys, lanes, bridges, viaducts, aqueducts, wharves, docks, landings and other public highways, sewers, sewage disposal plants and'farms, drains, ditches, culverts, canals, streams, watercourses, all public buildings, except as herein otherwise provided, all parks, playgrounds, boulevards, cemeteries, squares and other public places and grounds belonging to the city or dedicated to its use, and of water, heat, light and power plants and all other public utilities of whatsoever character, owned, leased or operated by the city.”
It is seen that respondent has general charge of the construction, improvement, repair and maintenance of practically all city property, which includes the lot with which the present case is concerned, but, assuredly, the council has the authority to legislate concerning any city property and, under proper circumstances, to sell or lease municipally owned property. If so, where the council authorizes a lease, it seems to us that the Director of Public Service is the proper agent of the city to be authorized and directed to execute the lease.
Eespondent concedes that the city is empowered to authorize him to execute a lease but not to compel its signature by him.
It seems to us that if the council has the legislative authority to authorize the lease and to authorize the respondent to execute it, it must have the authority to direct the respondent *549 so to do, and that such direction in no way constitutes an unlawful interference with an administrative function.
Respondent himself has no power to enter into the contract but is simply the party to complete the contract properly authorized by the council.
The last ground upon which respondent relies in support of his demurrer is that section 73 of the city charter does not give the relator authority to apply to. this court for a writ of mandamus. This section reads as follows:
“In case any officer, board, or commission fail to perform any duty required by law, the City Attorney shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty.”
The contention is made that an ordinance is not a law, and that, since the section refers only to a duty required by law, it is not applicable to a duty required by ordinance.
In support of this contention, respondent relies upon the decisions of this court in reference to the meaning of the term, “law,” as it concerns Section 34, Article II, and Section 2, Article IV, of the Ohio Constitution.
In the case of the City of Cincinnati v. Correll, 141 Ohio St., 535, 49 N. E. (2d), 412, it is said on page 537:
“Section 34, Article II of the Ohio Constitution, reads as follows:
“ ‘Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power.’
“The word ‘laws’ as used in this section does not embrace municipal ordinances, but defines the legislative power of the General Assembly only. ’ ’
In reference to Section 2, Article IV, which provides as to the number of judges of the Supreme Court who must concur in order to declare a law unconstitutional, this court has held that the term, “law,” in this section refers only to a state statute and not to an ordinance of a municipality. Fullwood v. City of Canton, 116 Ohio St., 732, 158 N. E., 171, and Village of Brewster v. Hill, a Taxpayer, 128 Ohio St., 354, 191 N. E., 366.
*550 However, the foregoing pronouncements of this court must be confined to the particular constitutional provisions to which they apply. Where a city charter speaks of a law, it is inconceivable to conclude that such term does not include ordinances, for the reason that the legislative body set up by a city charter can only enact ordinances or resolutions and not statutes.
In Froelich v. City of Cleveland, 99 Ohio St., 376, 124 N. E., 212, it is stated in the opinion that “it must be remembered that neither the state in the passage of general laws nor the municipality in the passage of local laws may make any regulations which are unreasonable.”
In Benjamin v. City of Columbus, 167 Ohio St., 103, 146 N. E. (2d), 854, this court, recognizing that municipal ordinances are laws, said in paragraph one of the syllabus:
“Where all the proposed uses of certain pin-game machines by their owners will necessarily violate the law as set forth in valid municipal ordinances, the petitions of such owners seeking equitable relief to protect those machines and seeking declaratory judgments setting forth their rights and duties with respect to them will be dismissed.”
In United State Fidelity & Guaranty Co. v. Guenther, 281 U. S., 34, 74 L. Ed., 683, 50 S. Ct., 165, 72 A. L. R., 1064 (an Ohio case), the court stated:
“* * * the clause uses the broad phrase ‘fixed by law’ in which the term ‘law’ is used in a generic sense, as meaning the rules of action or conduct duly prescribed by controlling authority, and having binding legal force; including valid municipal ordinances as well as statutes.”
We are of the opinion that the decisions of this court in reference to Section 34, Article II, and Section 2, Article IV, of the Constitution, are confined to such sections, and that, where a city charter speaks of a duty required by law, such an expression comprehends a city ordinance as well as. a state statute.
A question was raised during oral argument in this court as to whether the doctrine laid down in State, ex rel. Underground Parking Commission, v. Alexander, Secy.-Treas., Underground Parking Commission, 167 Ohio St., 359, 148 N. E. (2d), 500, is applicable to the present case.
In the Alexander case, the Underground Parking Commis *551 sion instituted an action in mandamus against its secretary-treasurer, Alexander, to compel him to perform certain duties. The writ was denied upon the theory, stated by this court as follows:
“It is apparent from the words of Section 5538.02, Revised Code, that, if respondent will not perform those ministerial duties, the commission can appoint a secretary-treasurer who will. Since a member of the commission may be so appointed and. a majority of the commission are in favor of performance of those duties, it is obvious that relator has an adequate remedy by way of self-help. Hence, it does not need the relief sought.”
In the present case, it is suggested that, if respondent will not perform the duty enjoined upon him, the council might pass another ordinance directing some other officer to execute the lease. However, it is obvious that this case is not in the same category as the Alexander case. In the present case, the council has no power to appoint the director of public service.
To apply to the present case the self-help doctrine, which was so applicable to the Alexander case, would be fantastic.
From what we have said, it is our view that respondent’s demurrer to relator’s petition must be overruled and the writ of mandamus allowed.

Writ allowed.

Taut, Matthias, Bell and Herbert, JJ., concur.