# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. # 1209008698A
)
VINCENT STALLINGS, )
)
Defendant. )

Submitted: April 30, 2018
Decided: July 31, 2018

**Upon Stallings' Motion for Postconviction Relief: DENIED**

## MEMORANDUM OPINION

Christopher S. Koyste, Esquire of LAW OFFICE of CHRISTOPHER S. KOYSTE, LLC, Wilmington, Delaware, Attorney for Defendant.

Andrew J. Vella, Esquire of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for the State.

**LeGrow, J.**

Four days before his scheduled trial on murder, robbery, and associated firearms charges, Vincent Stallings pleaded guilty to one count each of first degree murder, robbery, and possessing a firearm during the commission of a felony. In exchange for the plea, the State agreed not to seek the death penalty and to dismiss the remaining charges. Before he was sentenced, Stallings moved, through counsel, to withdraw his guilty plea. Shortly thereafter, he also filed a motion to proceed *pro se*, followed by motions in which Stallings sought the appointment of substitute counsel and stated unequivocally that he did not intend to waive his right to counsel.

The Court ultimately denied the motion to withdraw the guilty plea and did not further address Stallings' motion to proceed *pro se*. The Delaware Supreme Court affirmed Stallings' conviction on appeal. Stallings now seeks postconviction relief, arguing the trial court erred in accepting his plea, denying the motion to withdraw, and failing to hold a hearing on Stallings' motion to proceed *pro se*. Stallings also argues his trial and appellate counsel were ineffective and that ineffective assistance is the reason he failed to raise his claims of legal error at an earlier stage of the proceedings. The parties' arguments in this case present two fundamental questions. First, was the trial court's colloquy with Stallings regarding a different firearm count than the count listed on the plea agreement a fundamental error affecting the knowing, intelligent, and voluntary nature of the

plea? Second, did the Court err in failing to hold a hearing on Stallings' request to proceed *pro se* when Stallings later acted inconsistently with that motion? Under the facts of this case, I conclude the error in the colloquy was not a serious procedural defect. As to the motion to proceed *pro se*, in my view Stallings abandoned his request almost as soon as he made it. Because trial counsel's representation was not ineffective, and Stallings' claims of legal error are barred, his postconviction motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2012, three individuals robbed the HMS truck stop in Newark, Delaware. While one of the perpetrators held a truck stop employee at gunpoint, two others gathered cash from the room. The perpetrators ultimately fled with $50,000. The event was captured on video surveillance, and fingerprints identified John Slater as a possible participant in the crime. When he was interviewed by the police, Slater identified Stallings as the individual who held the employee at gunpoint.

On the night of September 11, 2012, two men targeted the same HMS truck stop. Although the men were unable to gain access to the cash room on this occasion, the attempted robbery was captured on video. One of the men participating in the attempted robbery wore a black mask. A few hours later, early in the morning on September 12, two men committed an armed robbery at a 7-

2

Eleven convenience store near the HMS truck stop. Video footage of the robbery showed a woman entering the store, buying something, and leaving. Shortly thereafter, two armed men entered the store, one wearing a black mask and the other wearing a white mask. The individual in the black mask held the store employee, Mohammed Ullah, at gunpoint, while the white-masked individual gathered money and cigars from behind the counter. As the two assailants were leaving, the black-masked individual fatally shot Ullah.

Police arrested Stallings the following day and charged him with first degree murder, robbery, and related charges stemming from the truck stop and 7-Eleven incidents on September 11th and 12th. Stallings was indicted with two co-defendants, Andre Palmer and Vanisha Carson. The indictment did not include charges relating to the April 2012 robbery. The State indicated it would seek the death penalty on the murder charges.

Police searched Stallings' home pursuant to a warrant and recovered a black mask and a firearm. DNA was recovered from the black mask and compared to Stallings's DNA. Stallings could not be excluded as a contributor to the DNA on the mask, and 99.9999% of every relevant population set could be excluded as a contributor. The caliber of the firearm matched a shell casing found at the scene of the murder. Police also learned that late in the morning of September 12, 2012, Stallings' fiancé asked him why he was "acting weird," and Stallings responded "I

did something that I wasn't [supposed] to, but ... I don't wanna involve you and I'm sorry."[1] Stallings went on to say he "just did something bad."[2]

Palmer ultimately admitted he participated in the robberies on April 1, September 11, and September 12. Palmer pleaded guilty and gave a statement identifying himself as the individual wearing the white mask in the 7-Eleven surveillance and identifying Stallings as the black-masked assailant who shot Ullah. Carson admitted she gave Stallings and Palmer information to enable them to access the HMS cash room in April 2012. Carson also admitted she was the woman captured on video entering the 7-Eleven shortly before the robbery took place. Carson gave a statement implicating Stallings in the incidents on April 1 and September 12. Both Palmer and Carson agreed to testify against Stallings at trial.

On January 21, 2014, the State reindicted Stallings. In addition to the previously-indicted charges related to the September crimes, the reindictment added five charges relating the April robbery. A month later, Stallings' trial counsel, Anthony Figliola, Esquire and Kevin Tray, Esquire (collectively, "Trial Counsel"), filed three pretrial motions: (1) a motion to dismiss the robbery and associated firearm and conspiracy charges in the indictment (Counts V-IX) on the

---

[1] App. 180. Citations to "App." are to the appendix to Stallings' Amended Motion for Postconviction Relief.
[2] App. 180.

4

basis that the indictment failed to allege all essential elements, including the name of the robbery victims; (2) a motion to sever for purposes of trial the Possession of a Firearm by a Person Prohibited ("PFBPP") charge (Count XV); and (3) a motion to sever and separately try the charges relating to the April incident and the charges relating to the September incidents.[3] On May 8, 2014, the Court denied the motion to dismiss and the motion to sever the April and September charges[4] and granted the motion to sever the PFBPP charge.[5]

On June 20, 2014, Stallings pleaded guilty to one count each of first degree murder, first degree robbery, and Possession of a Firearm During the Commission of a Felony ("PFDCF"). The Court ordered a presentence investigation and scheduled Stallings for sentencing.

On August 13, 2014, Trial Counsel filed a motion to withdraw guilty plea on Stallings' behalf. In that motion, Trial Counsel argued Stallings felt frightened and pressured by advice received from counsel and his family and agreed to accept the plea without fully understanding the rights he was relinquishing.[6] Stallings filed a supplemental letter arguing that Trial Counsel's refusal to challenge the State's case and properly investigate the evidence left Stallings no choice but to accept the

---

[3] D.I. 40-42; App. 43-58.
[4] D.I. 50-51.
[5] D.I. 51.
[6] D.I. 63.

5

plea.[7] Stallings also made several other filings directly with the Court. The Court denied the motion to withdraw without prejudice, ordered the transcript of the plea hearing, and instructed Trial Counsel and Stallings that they each could submit a revised motion to withdraw after receiving the transcript. The Court indicated it would not accept any filings directly from Stallings other than one renewing and supplementing his motion to withdraw.[8]

While the parties were awaiting the transcript, Stallings attempted to file various *pro se* motions. In response, the Court repeatedly advised Stallings that Superior Court Criminal Rule 47 prohibited such filings and the Court would not consider any *pro se* filing except one renewing the motion to withdraw guilty plea.[9]

After receiving the transcript, Trial Counsel advised the Court they had no good faith basis to renew Stallings' motion to withdraw his guilty plea. As permitted by the Court, Stallings filed a *pro se* "Supplemental Motion to Withdraw[] Guilty Plea."[10] In his Supplemental Motion, Stallings argued Trial Counsel's failure to prepare the case for trial, along with pressure Stallings received from his family, coerced him into pleading guilty. Stallings argued Trial Counsel manipulated him and his family by exaggerating the likelihood Stallings would be convicted and sentenced to death, and Trial Counsel did so in order to

[7] D.I. 64.
[8] D.I. 65.
[9] *See* D.I. 67, 69, 70.
[10] D.I. 73.

6

mask their own ill-preparedness for trial. The State opposed Stallings' supplemental motion.

At Stallings' sentencing hearing on December 19, 2014, the Court denied Stallings' Supplemental Motion to Withdraw, ruling:

> The Court is satisfied that the supplemental motion to withdraw adds very little, if anything, to the original motion. And the transcript of the plea colloquy tends to confirm that the plea was knowing, voluntary, and intelligent. Accordingly, the Court is standing by its original denial of the motion to withdraw guilty plea, and the supplemental motion is denied.[11]

The Court sentenced Stallings to life imprisonment on the charge of First Degree Murder, 25 years at Level V for PFDCF, and three years at Level V for Robbery First Degree.[12]

Trial Counsel filed a notice of appeal with the Delaware Supreme Court, followed by a no-merit brief under Supreme Court Rule 26(c).[13] Trial Counsel advised Stallings of his right under Rule 26(c) to identify any issues he wished Trial Counsel to raise with the Delaware Supreme Court.[14] Stallings did not identify any such issues. The State moved to affirm the trial court's ruling and the Supreme Court granted that motion.[15] On December 9, 2015, Stallings filed a *pro se* motion for postconviction relief. Postconviction counsel later was appointed

---

[11] App. 332.
[12] D.I. 77.
[13] *Stallings v. State*, No. 10,2015 (Del.).
[14] App. 116.
[15] *Stallings v. State*, 116 A.3d 1244 (Table) (Del. 2015).

and filed an amended motion for postconviction relief, which the parties briefed and argued to the Court. Trial Counsel filed an affidavit responding to Stallings' ineffective assistance claims in his amended motion.

## ANALYSIS

Stallings raises five claims in his amended postconviction motion: (1) the trial court erred in taking Stallings' guilty plea and denying the motion to withdraw; (2) Trial Counsel was ineffective in both preparing Stallings' case for trial and in failing to ensure his plea was knowing, intelligent, and voluntary; (3) the trial court erred in failing to hold a hearing on Stallings' request to proceed *pro se*; (4) Trial Counsel was ineffective by failing to protect Stallings' constitutional right to represent himself; and (5) Trial Counsel was ineffective by failing to raise on appeal the errors associated with Stallings' plea and his motion to proceed *pro se*.

### I. Stallings' claims that the trial court erred are barred under Rule 61(i)(3).

Before considering the merits of any claim for postconviction relief, the Court first must consider whether the claim is barred under Superior Court Criminal Rule 61. Rule 61 contains several procedural bars, but only the "procedural default" bar is pertinent to this case.[16] Specifically, Rule 61(i)(3)

---

[16] The State concedes the other procedural bars in Rule 61 do not apply to Stallings' claims in his amended motion.

8

prohibits a defendant from raising "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction . . . unless the movant shows (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights."[17]  The State contends this rule bars Stallings' claims that the trial court erred and he has not pleaded facts to overcome that bar.

**A. Stallings' claim that the trial court erred in accepting his plea and denying the motion to withdraw procedurally is barred.**

The State argues Stallings' claim that the trial court erred in taking his plea and denying the motion to withdraw the plea is barred because it could have been raised with the trial court and on direct appeal.  Stallings acknowledges that the argument could have been raised in the proceedings leading up to the judgment of conviction, but contends he has demonstrated cause for the procedural default and actual prejudice by showing that Trial Counsel was ineffective in failing to raise the claim and that, had Trial Counsel timely raised the arguments, Stallings' plea would not have been entered or, at a minimum, the Court would have granted the motion to withdraw.

If an attorney's failure to pursue a reasonably available claim is so egregious as to constitute ineffective assistance of counsel, that failure may constitute cause to excuse a procedural default under Rule 61(i)(3).[18]  Attorney error that falls short

---

[17] Super. Ct. Crim. R. 61(i)(3).
[18] *Shelton v. State*, 744 A.2d 465, 475 (Del. 2000).

9

of ineffective assistance, however, does not constitute "cause" under that rule. Trial Counsel's alleged ineffective assistance is the only argument Stallings raises in support of his contention that there is cause for relief from the procedural default. Accordingly, the threshold issue is whether Trial Counsel's failure to raise the defect in the plea, either during the colloquy or in support of Stallings' bid to withdraw the plea, amounted to ineffective assistance of counsel.

### 1. The plea colloquy

Stallings alleges a procedural defect existed in his plea paperwork and was exacerbated by the plea colloquy, which in turn infected the entirety of his plea and contradicts the Court's finding that his plea was knowing, intelligent, and voluntary. When Stallings entered his plea on June 20, 2014, he signed the plea agreement and completed with Trial Counsel a Truth-in-Sentencing Guilty Plea Form. On that form, Stallings (i) denied he was forced to enter into the plea, and (ii) acknowledged he was waiving certain constitutional rights, including the right to proceed to trial and force the State to prove the charges against him. Stallings also stated on the form that he understood the range of sentences he faced by pleading guilty, he was satisfied with Trial Counsel's representation, and he had been advised fully of his rights.[19]

---

[19] App. 62.

The plea agreement Stalling signed identified three charges to which he was pleading guilty: Murder First Degree (Count I), Robbery First Degree (Count XI), and PFDCF (Count VII).[20] In the reindictment, Count XI was the robbery charge associated with the April 1 robbery, and Count VII was the PFDCF charge associated with the September 12 robbery.[21]

Before accepting the plea, the presiding judge engaged in a colloquy with Stallings. The Court first reviewed with Stallings the three charges to which he was pleading guilty. During the colloquy, the presiding judge read each applicable charge listed in the indictment, including the date of the charged crime, the name of the victim (if applicable), and the elements of the crime.[22] While reviewing the charges, the Court read Stallings the relevant portions of the indictment for Count I, Murder First Degree on September 12, 2012, and Count XI, Robbery First Degree on April 1, 2012. The Court, however, read Count XII, rather than Count VII, for the PFDCF charge.[23] Although Count XII and Count VII both were charges of PFDCF, Count XII related to the robbery on April 1st and Count VII related to the Robbery on September 12th.[24] After the presiding judge read each

---

[20] App. 61. The criminal action numbers associated with these three counts also were listed on the sentencing order.
[21] App. 251; App. 254-56.
[22] App. 326.
[23] *Id.*
[24] App. 254-256.

count, Stallings admitted he committed each crime as read aloud by the Court.[25] The Court then confirmed "So, you're pleading guilty to these three charges because you are, in fact, guilty of them?" Stallings responded "Yes."[26]

The judge then further discussed with Stallings his decision to plead guilty and the rights he was waiving by so doing. Stallings acknowledged signing the Truth-in-Sentencing form and confirmed he discussed and completed the form with Trial Counsel.[27] Stallings stated he answered all the questions on the form truthfully. Stallings also acknowledged the constitutional rights he was waiving by pleading guilty and the mandatory life sentence he faced as a result of the plea.[28] Stallings stated he voluntarily was entering the plea and understood that, once the plea was accepted by the Court, it would be "virtually impossible" to undo it.[29] Stallings informed the Court he was satisfied with Trial Counsel's representation of him.[30] On two separate occasions, the presiding judge asked Stallings if he was sure he wanted to plead guilty, and each time Stallings stated that he wanted to do so.[31] The presiding judge thereafter accepted Stallings' plea, finding it was knowing, intelligent, and voluntary.[32]

---

[25] App. 326.
[26] Id.
[27] Id.
[28] App. 326-27.
[29] Id.
[30] App. 327.
[31] Id.
[32] Id.

Stallings now argues that his plea was not knowing, intelligent, and voluntary because he did not understand the nature of the charges for which the plea was offered, pointing to the discrepancy between the PFDCF count listed on the plea agreement and the PFDCF count reviewed by the Court during the colloquy. Stallings also contends he believed he only was pleading guilty to charges relating to the September 12th robbery and murder. Stallings maintains Trial Counsel's failure to properly inform him of the charges to which he was pleading, failure to correct the defect in the Court's colloquy, and failure to raise the defect as a basis supporting Stalling's motion to withdraw his plea amounted to ineffective assistance of counsel and constituted cause excusing the failure to raise these issues in the proceedings leading up to his judgment of conviction.

## 2. The ineffective assistance of counsel standard

To prevail on a postconviction claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must establish that (i) counsel's representation fell below an objective standard of reasonableness, and (ii) but for counsel's unprofessional errors, there is a reasonable possibility the defendant would not have pleaded guilty and instead would have insisted on going to trial.[33] There is a strong presumption that counsel's representation was reasonable.[34]

---

[33] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[34] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

Accordingly, a defendant must make specific allegations of actual prejudice and substantiate them; vague allegations or conclusory statements will not suffice.[35]

### 3. Trial Counsel's assistance regarding Stallings' plea was not ineffective in the trial court or on appeal.

As the State points out, the only discrepancy between the plea agreement and the colloquy relates to the PFDCF charge; the plea agreement and the colloquy match with respect to the murder and robbery charges. And, although Stallings contends he did not understand the range of sentence he faced, or the fact that he was pleading guilty to charges relating to both the September 12th and April 1st crimes, those contentions squarely are contradicted by both the Truth-in-Sentencing Form and the plea colloquy.

On the plea agreement, Stallings indicated he was pleading guilty to Robbery First relating to the April 1 incident, and the trial court specifically read the indictment for each charge, referencing the April 1 date for the Robbery First and PFDCF charges.[36] The Truth-in-Sentencing Form and the colloquy also specifically referenced the mandatory life sentence Stallings faced by pleading guilty to Murder First Degree. A defendant is bound by the statements he gives during the plea colloquy absent clear and convincing evidence that he did not understand the plea agreement, was forced to accept the plea, or was not satisfied

---

[35] *Id.*; *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015).
[36] App. 61, App. 362.

with counsel's representation.[37] Stallings has not provided clear evidence meeting that standard, and he therefore is bound by his representations to the Court and his admission to committing the charges explained by the Court during the colloquy. Accordingly, Stallings has not shown that Trial Counsel was ineffective in advising him about the plea agreement.

Stallings also argues, however, that the trial court's reading of the April 1 PFDCF charge, rather than the September 12 PFDCF charge, was a procedural error. Stallings contends trial counsel was ineffective in failing to either correct the error during the plea colloquy or raise it as a basis supporting Stallings' motion to withdraw his guilty plea. Stallings is correct that a "serious" procedural defect itself will support withdrawal of a guilty plea, even if the other factors typically considered in connection with a motion to withdraw guilty plea do not support the motion.[38] In *Patterson v. State*, the Delaware Supreme Court held:

> Certain of the factors [considered relevant to a motion to withdraw], standing alone, will themselves justify relief. Thus, if there is a serious procedural defect in the plea process, or if it clearly appears that the defendant did not knowingly or voluntarily consent to the plea agreement, a sufficient basis exists for withdrawal of the plea

---

[37] *Somerville v. State*, 703 A.2d 629, 632 (Del. 2008).

[38] *Patterson v. State*, 684 A.2d 1234, 1239 (Del. 1996). Those factors are: "(a) was there a procedural defect in taking the plea; (b) did the defendant knowingly and voluntarily consent to the plea agreement; (c) does the defendant have a basis to assert legal innocence; (d) did the defendant have adequate legal counsel; and (3) will the State be prejudiced or the court unduly inconvenienced if the motion is granted." *Id.* at 1238.

notwithstanding whether there is a basis for a claim of factual innocence or whether there is prejudice to the State.[39]

On the other hand, a clerical error, or even a procedural defect that does not appear to affect a defendant's understanding of the nature and consequences of his plea, likely will not support a motion to withdraw.[40] In *Patterson*, the Delaware Supreme Court held that defense counsel's incorrect advice regarding the minimum mandatory sentence the defendant faced, the trial court's failure to give the defendant time to discuss the mandatory sentence with his counsel after the inaccuracy was corrected, and the inconsistencies between the sentence listed on the plea forms and the sentence the defendant faced amounted to a serious procedural defect.[41] In contrast, the Delaware courts have concluded that other defects are not "serious" and do not support withdrawal, including defects relating to (i) the trial court's failure to recite all the elements of a charge, (ii) trial counsel's advice about the defendant's ability to "void" the plea after it was entered, (iii) the effective date listed on the plea agreement, or (iv) a defendant's

---

[39] *Id.* at 1239.

[40] *Id.* at 1237 (holding that although the trial court's failure to read the charge to the defendant, advise him of the elements of the charge, or ask whether his counsel had done so was a defect in the plea, it would not on its own support a motion to withdraw the plea); *State v. Torres*, 2015 WL 1055966, at *2 (Del. Super. Mar. 3, 2015) (holding that the fact that plea agreement indicated it had expired before defendant signed it was a clerical error that did not support the defendant's ineffective assistance of counsel claim).

[41] *Patterson*, 684 A.2d at 1238-39.

alleged misunderstanding about the range of sentence where the plea forms specifically listed the correct sentence.[42]

The defect Stallings points to in this case is not a serious defect that calls into question whether his plea voluntarily was offered with a complete understanding of the nature of the charges and the consequences of his plea. The face of Stallings' plea agreement demonstrates his knowledge that he was pleading to charges relating to both the April 1st and September 12th crimes. Furthermore, the Court in its colloquy specifically recited the elements in each count, including the date of each offense, and Stallings admitted to committing those offenses, including possessing a firearm during the April 1st robbery. The discrepancy between the PFDCF charge listed on the plea agreement and PFDCF charge reviewed by the trial court during the colloquy did not alter the range of sentence Stallings faced and did not implicate Stallings in a course of criminal conduct to which he had not already admitted.[43] In light of the trial court's clear colloquy and Stallings' plain acknowledgment of guilt, the fact that the plea agreement and sentencing order listed a different criminal action number for the PFDCF charge is

---

[42] *Patterson*, 684 A.2d at 1236-37; *Barnett v. State*, 2007 WL 1314664, at *3 (Del. May 7, 2007); *Bradley v. State*, 2007 WL 1599991, at *1 (Del. June 5, 2007); *Torres*, 2015 WL 1055966 at *2-3.

[43] Stallings separately admitted to participating in the April 1st robbery by pleading guilty to Count XI. The Court's conclusion regarding the materiality of this defect could be different if the PFDCF charge about which the Court conducted the colloquy involved Stallings admitting to participating in a course of criminal conduct to which he was not already pleading guilty.

17

not a serious procedural defect that contradicts the trial court's finding that Stallings' plea was knowing, intelligent, and voluntary.

Accordingly, because the error Stallings identified was not a serious procedural defect, Trial Counsel's failure to identify the error during the plea colloquy or use it as a basis to withdraw Stallings' plea did not fall below the objective standard of reasonableness. Neither the case law nor the record supports the conclusion that the trial court would have permitted withdrawal on the basis of this error. Accordingly, this argument does not support Stallings' contention that Trial Counsel's assistance was ineffective, and Stallings has not shown cause for his procedural default.

### B. Stallings' claim that the Court erred by failing to conduct a hearing in response to his motion to proceed *pro se* is barred by Rule 61(i)(3).

As with Stallings' claims regarding the plea, the State argues Stallings' claim that the trial court erred in failing to hold a hearing in response to his request to proceed *pro se* procedurally is barred because it could have been raised with the trial court and on direct appeal. Stallings contends the procedural default bar does not apply because he has demonstrated cause for the procedural default by showing that Trial Counsel was ineffective in failing to raise the claim and has established prejudice because his constitutional right to self-representation was denied. The question, therefore, is whether Stallings can demonstrate cause by showing Trial Counsel was ineffective in failing to protect Stallings' right to self-representation.

18

### 1. The right to self-representation

The United States Constitution and the Delaware Constitution grant defendants in a criminal proceeding the right to be represented by counsel, but also protect a defendant's fundamental constitutional right to represent himself.[44] Unlike the right to counsel, however, which attaches automatically and must be waived affirmatively, the right to self-representation does not attach unless and until a defendant asserts it.[45] A court must "scrupulously honor" a defendant's unequivocal request to proceed *pro se* if the court determines the defendant knowingly and voluntarily has waived his right to counsel and the court informs the defendant of the risks inherent in proceeding to trial without the assistance of counsel.[46] A defendant's request must, however, be clear and unequivocal, meaning that it must be made "in such a manner 'that no reasonable person could say the request was not made.'"[47]

### 2. Trial Counsel's representation did not fall below the objective standard of reasonableness because Stallings waived and abandoned his single request to proceed *pro se.*

Stallings contends he clearly and unequivocally invoked his right to self-representation and the Court therefore was bound to hold a hearing and permit him

---

[44] U.S. CONST. amends. VI, XIV; Del. Const. art. I, § 7; *Faretta v. California*, 422 U.S. 806, 807 (1975); *Hooks v. State*, 416 A.2d 189, 197 (Del. 1980).

[45] *Faretta*, 422 U.S. at 835; *Brown v. Wainright*, 665 F.2d 607, 610 (5th Cir. 1982)

[46] *Faretta*, 422 U.S. at 835; *Briscoe v. State*, 606 A.2d 103, 107-08 (Del. 1992).

[47] *Merritt v. State*, 2011 WL 285097, at *3 (Del. Jan. 27, 2011) (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)).

to represent himself if he knowingly and voluntarily waived his right to counsel. Because the Court never held such a hearing, and Trial Counsel neither insisted the Court do so nor raised the issue on Stallings' appeal, Stallings contends his constitutional rights were violated and he has overcome any procedural default by demonstrating cause and prejudice. Although Stallings is correct that a trial court's failure to hold a hearing on a defendant's plain request to proceed *pro se* constitutes legal error, and trial counsel's failure to take steps in response to a clear and unequivocal invocation could well constitute ineffective assistance of counsel, in this case Stallings made one request to proceed *pro se*, which he promptly abandoned and waived by reiterating numerous times to the Court that he was *not* waiving his right to counsel and wished to have substitute counsel appointed.

The following timeline clarifies the nature and content of Stallings' requests, all of which arose in the context of his efforts to withdraw the guilty plea:

- August 13, 2014: Trial Counsel filed a motion to withdraw Stallings' guilty plea.

- August 20, 2014: Stallings filed the following documents:

  o A *pro se* motion to withdraw guilty plea in which Stallings argued, in part, that Trial Counsel's failure to prepare the case for trial forced him to accept the guilty plea.[48]

  o A "Rule 9 Special Pleading Motion for Substitute Counsel" in which Stallings sought appointment of new counsel to represent

---

[48] App. 70-71.

him at an evidentiary hearing on the motion to withdraw the guilty plea.[49]

  o A letter addressed to the Court in which Stallings reiterated his request for substitute counsel.[50]

- August 25, 2014: the presiding judge issued a letter order addressing the motions to withdraw guilty plea filed by both Stallings and Trial Counsel. The Court denied those motions without prejudice, permitting Trial Counsel to file a renewed motion once they received a transcript of the plea colloquy. In that order, the Court held "Defendant may then make another filing to his liking, if he insists," but made clear that any other *pro se* filings by Stallings would be rejected.[51]

- September 2, 2014: Stallings filed a "Rule 9 Special Pleading Motion to Proceed *Pro Se*" in which he argued he had an irreparable conflict of interest with Trial Counsel.[52]

- September 12, 2014: the presiding judge issued a letter order finding that Stallings' September 2, 2014, motions violated the Court's August 25, 2014, order because he only was permitted to file a supplemental renewed motion to withdraw guilty plea.[53]

- Approximately September 18, 2014: Stallings filed the following:

  o A "Motion to Appoint Expert to Review Psychology of Plea and Counsels' Persuasions Before the Plea."[54]

  o A lengthy letter to the presiding judge in which Stallings:

    ▪ Noted he had not been granted leave to proceed *pro se*;[55]

    ▪ Stated multiple times that he has not waived, and "does not desire to waive," his 6th Amendment right to counsel;[56]

---

[49] App. 75.
[50] App. 76.
[51] App. 80.
[52] App. 81-82; D.I. 67.
[53] D.I. 67.
[54] App. 83.
[55] App. 84.

21

- Made three separate requests for appointment of substitute counsel;[57]

- Argued he had been without legal help since August 1, and the motion to withdraw guilty plea made clear that Trial Counsel had a conflict of interest;

- Detailed his unhappiness with Trial Counsel's representation and strategy;

- Stated "I am not qualified to respond to you without counsel;"[58]

- Noted that the "Motion for Substitute Counsel" and "*Pro Se* Motion" were still pending. In context, however, it is clear that Stallings used "*Pro Se* Motion" to refer to his motion to withdraw guilty plea, not his motion to proceed *pro se.*[59]

- October 5, 2014: Stallings sent a letter to Trial Counsel asking questions regarding the plea transcript and inquiring whether Trial Counsel would file a motion to withdraw as counsel.[60]

- October 9, 2014: the Court provided all parties a copy of the plea colloquy transcript.[61]

- October 14, 2014: Stallings sent Trial Counsel a letter reiterating his request that they withdraw from his case.[62]

- October 22, 2014: Stallings filed *pro se* a supplemental motion to withdraw guilty plea. That supplemental motion raised many of the same arguments contained in Stallings' September 18 letter to the judge, including making multiple requests for substitute counsel and reiterating that Stallings had not waived his right to counsel.[63]

---

[56] App. 84-85.
[57] App. 85-86.
[58] App. 88.
[59] *See* App. 84-86.
[60] App. 91.
[61] D.I. 72.
[62] App. 92.
[63] App. 94-95.

- October 23, 2014: Trial Counsel filed a letter indicating they had no good faith basis to renew Stallings' motion to withdraw guilty plea.[64]

With that context in mind, it is clear from Stallings' multiple letters and motions with the Court that he promptly abandoned his September 2nd motion to proceed *pro se* and never again clearly or unequivocally asserted his right to self-representation either to the Court or to Trial Counsel. Even if Stallings' Motion to Proceed *Pro Se* could be considered, in the context of all his contemporaneous filings, to be an unequivocal invocation of his right to self-representation, his conduct shortly thereafter plainly indicated his intent to waive or abandon that request. A waiver of the right to self-representation may be found "if it reasonably appears to the court that defendant has abandoned his initial request to represent himself."[65] A court has no duty to conduct a hearing or otherwise address a defendant about his wish to proceed *pro se* if "by conduct subsequent to the invocation of his right the defendant appears to be vacillating on his decision."[66]

The Delaware courts expressly recognize that a defendant may, by conduct or words, waive or abandon a previously-expressed desire to proceed *pro se*, and in such circumstances the trial court need not conduct a hearing.[67] Stallings did just

---

[64] D.I. 74.
[65] *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982).
[66] *Dorman v. Wainwright*, 798 F.2d 1358, 1367 (11th Cir. 1986) (citing *Brown*, 665 F.2d at 612).
[67] *See, e.g.*, *Walker v. State*, 2007 WL 471957, at *2-3 (Del. Feb. 15, 2007) (holding defendant abandoned his right to self-representation after filing a single-page "motion to request to proceed pro se," by never raising the issue at "critical junctures before trial" and continuing to allow his attorneys to represent him until the eighth day of trial).

23

that by stating in multiple filings that he did not wish to waive his right to counsel, wished to have substitute counsel appointed, and was not competent to represent himself. After making these filings, Stallings never reasserted his right to self-representation.[68]

Finally, Stallings argues his constitutional rights were violated because the Trial Court permitted a "hybrid" representation in which Stallings represented himself for purposes of the motion to withdraw, but for no other purpose. Stallings complains the Trial Court permitted this approach without ever holding the requisite hearing to determine that Stallings was waiving his right to counsel, was competent to do so, and understood the risks of self-representation. This argument mischaracterizes the record. The Court's August 25th order expressly permitted *Trial Counsel* to renew the motion to withdraw guilty plea upon receipt of the plea transcript.[69] The Court also indicated Stallings could supplement Trial Counsel's filing "if he insists." That is, the Court did not require Stallings to proceed *pro se* on the motion to withdraw, but instead simply permitted a narrow exception to Rule 47 to allow Stallings to file a *pro se* supplemental pleading if he wished to do so. This did not constitute "hybrid representation."

---

[68] Although Stallings argues in his postconviction motion that he reasserted the right in his September 18th letter to the Court, it is clear that those references were to his motion to withdraw, not the motion to proceed *pro se*. *See supra* n. 59.
[69] App. 80.

Because Stallings promptly abandoned and waived his single invocation of his right to self-representation, the trial judge was not obligated to conduct a hearing, and Trial Counsel was not obligated to take steps to preserve Stallings' right to proceed *pro se*. Stallings therefore cannot demonstrate cause for his procedural default in failing to raise this argument at the appropriate stage of the proceedings.

### C. Stallings has not overcome the procedural bars to his claims of legal error.

Trial Counsel's alleged ineffective assistance of counsel was the only argument Stallings advanced in support of his contention that there was cause for relief from his procedural defaults. Having failed in that showing, the Court need not consider whether Stallings sufficiently demonstrated prejudice under Rule 61(i)(3)(B). Stallings' procedural default therefore bars these claims of legal error unless he can show that bar is inapplicable under Rule 61(i)(5) because (1) the trial court lacked jurisdiction or (2) Stallings pleads with particularity that (a) new evidence creates a strong inference of actual innocence, or (b) a new rule of constitutional law retroactively applies to his case and renders his conviction invalid.[70]

Stallings has not disputed jurisdiction or raised a new rule of constitutional law applicable to his case. Although, as discussed below, Stallings argues Trial

---

[70] Super. Ct. Crim. R. 61(i)(5); 61(d)(2).

Counsel failed to investigate cell phone records that could have lent support to Stallings' alibi, that argument does not even satisfy the standard for ineffective assistance, let alone amount to particularized pleading creating a strong inference of actual innocence. Accordingly, Rule 61(i)(3) bars Stallings' claims of legal error relating to the plea colloquy, the motion to withdraw, and his right to self-representation.

## II. Stallings' claims of ineffective assistance of counsel do not meet the *Strickland* standard.

Stallings alleges Trial Counsel was ineffective by failing to (1) fully inform him about the charges to which he was pleading guilty; (2) correct defects in the plea colloquy or identify those defects in the motion to withdraw guilty plea; (3) investigate cell phone records; (4) investigate or challenge the authenticity of the 7-Eleven video surveillance; (5) challenge the reindictment; (6) protect Stallings' constitutional right to represent himself; and (7) raise the trial court's legal errors on appeal. As set forth above, under *Strickland v. Washington*,[71] in order to establish ineffective assistance of counsel Stallings must show that counsel's performance fell below an objective standard of reasonableness and resulted in prejudice. In cases in which a defendant pleaded guilty, prejudice is established upon a showing that there is a reasonable possibility the defendant would not have

---

[71] 466 U.S. 668 (1984)

26

pleaded guilty and instead would have insisted on going to trial.[72] "Although not insurmountable, the *Strickland* standard is highly demanding and leads to a 'strong presumption that the representation was professionally reasonable.'"[73]

As discussed in Section I.A., above, the record does not support Stallings' argument that Trial Counsel failed to advise properly him of the charges to which he was pleading guilty and the mandatory life sentence he faced. Similarly, the Court already has concluded that Trial Counsel's failure to correct a clerical discrepancy between the plea colloquy and the plea agreement, or use that discrepancy to support the motion to withdraw Stallings' plea, did not fall below the objective standard of reasonableness because the clerical error would not have served as a basis to withdraw the plea. Finally, as addressed in Section I.B., above, Trial Counsel's failure to "protect" Stallings' right to self-representation at the trial level or on appeal did not fall below the objective standard of reasonableness because Stallings abandoned or waived his motion to proceed *pro se* almost immediately after it was filed. Stallings' remaining ineffective assistance claims are addressed *seriatum*.

---

[72] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[73] *Bradley v. State*, 135 A.3d 748, 760 (Del. 2016).

27

## A. Trial Counsel's alleged failure to investigate cell phone records was not ineffective assistance of counsel.

Stallings argues Trial Counsel rendered ineffective assistance by failing adequately to investigate cell records collected from Palmer, Carson, and Stallings. Stallings first argues that Trial Counsel erred by not following up on the State's promise to provide a formal report authored by the State's cell phone expert, Agent Shute. Stallings acknowledges that the State provided Trial Counsel the cell records themselves and a written summary of the "substance" of Shute's report.[74] Stallings nonetheless vaguely argues that Trial Counsel never received the formal report because it was delayed by technical difficulties. Stallings, however, fails to articulate any specific allegations of prejudice resulting from this alleged failure.[75]

Stallings also argues Trial Counsel failed to identify certain calls made with Stallings' phone on the night of September 11-12 that would have bolstered Stallings' alibi and impeached his co-defendant's statements implicating him in the events of that night. Stallings' alibi was his fiancé, who gave a statement to the police that Stallings was in their shared residence when she went to sleep between 10:30 and 11:00 p.m. on September 11th and was there when she woke up in the morning on September 12th. Stallings and his fiancé shared a cell phone, and Stallings points to calls made on that phone that would (1) support his fiancé's

---

[74] Opening Br. at 36-38.

[75] A defendant seeking postconviction relief for ineffective assistance of counsel must articulate and substantiate "concrete allegations" of actual prejudice. *Bradley*, 135 A.3d at 760.

statements regarding what time she went to sleep, (2) show that the shared phone likely was in Stallings' residence close to the time of the September 11th robbery and shortly after the September 12th robbery and murder, and (3) show that a call was made from Stallings' shared phone to Palmer's phone at 12:26 a.m on September 12, a time when Palmer told police he and Stallings were together preparing for the 7-Eleven robbery. Stallings argues these calls, individually and collectively, would bolster Stallings' alibi and cast doubt on the veracity of Palmer's and Carson's statements to police.

These arguments fail to satisfy the *Strickland* standard for a number of reasons. First, Trial Counsel made a strategic decision not to rely on Stallings' fiancé as an alibi witness.[76] They did so because it appeared Stallings' fiancé would not cooperate with the State and therefore the State would not call her as a witness. If Stallings' fiancé did not testify, the State could not introduce the incriminating statements Stallings made to her on September 12th after the robbery and murder.[77] If, however, Stallings called her as a witness, the State likely would have succeeded in introducing into evidence Stallings' inculpatory statements to his fiancé. Trial Counsel's strategic decisions are entitled to deference, particularly those based on a thorough investigation of law and facts.[78] Failing to defer to such

---

[76] Figliola Aff. 10 (D.I. 124).
[77] *Id.* at 10-11.
[78] *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

strategic choices imposes the "distorting effects of hindsight" that the *Strickland* standard seeks to avoid.[79] Here, Trial Counsel made a strategic choice with a full understanding of the substantial harm that calling Stallings' fiancé as a witness likely would cause to his case.

In addition, Stallings also has not made concrete allegations of actual prejudice resulting from Trial Counsel's purported failure to identify phone calls indicating Stallings' shared phone was in his residence around the time of the September 11th and 12th crimes. Whatever marginal value that evidence might have provided does not overcome the overwhelming evidence of Stallings' guilt and therefore does not establish a reasonable probability that, had Trial Counsel identified the evidence relating to these phone calls, Stallings would not have pleaded guilty and instead would have taken the case to trial.[80] Apart from Stallings' co-defendants' statements, that overwhelming evidence included the video surveillance, the mask and gun recovered in Stallings' residence, and the

---

[79] *Id.* at 689.

[80] *See, e.g., Neal v. State*, 80 A.3d 935, 946 (Del. 2013) (ruling that "[g]iven the overwhelming record evidence that supports the accomplice's testimony, Neal cannot show a reasonable probability that the jury would have come to a different result" had trial counsel made different decisions); *Drummond v. State*, 2002 WL 1472281, at *2 (Del. July 2, 2002) (holding that "in view of the overwhelming evidence of Drummond's guilt, . . . Drummond cannot establish actual prejudice from his trial counsel's failure to more thoroughly cross-examine" the officer conducting the traffic stop); *State v. Powell*, 2016 WL 3023740, at *23 (Del. Super. May 24, 2016) (finding that claims regarding trial counsel's alleged failure to investigate did not support a finding of ineffective assistance of counsel based, in part, on overwhelming evidence of defendant's guilt).

DNA evidence found on the mask. Accordingly, Stallings cannot meet either prong of *Strickland* with respect to the cell phone records.

### B. Trial Counsel's investigation regarding the authenticity of the 7-Eleven video surveillance objectively was reasonable.

Stallings next argues Trial Counsel was ineffective by failing to retain an expert who could have challenged the authenticity of the video depicting the 7-Eleven murder and robbery. The record reflects that Trial Counsel sent the video surveillance collected for the various nights in question to an expert in the hopes the expert could enhance the videos to identify the assailants' physical characteristics, such as tattoos.[81] With respect to the 7-Eleven video, the expert stated "it is not possible to optimally enhance videos that have already gone through some enhancement or resaving process, which yours have."[82] The expert provided Trial Counsel an example of a frame in which the top and bottom halves of the white-masked assailant's body were not aligned. The expert stated "[t]his is a result of incorrect video handling that resulted in manufactured frames, and could just as easily cause[] missing frames. It is not proof of willful intent and there is no means to determine who did this, how it was done, or what video frames (if any) are missing."[83] Although Trial Counsel considered hiring the expert to prepare a report and testify in support of a motion to suppress the video, they

---

[81] App. 24-A33; Figliola Suppl. Aff. Ex. B (D.I. 138).
[82] App. 24.
[83] App. 25.

ultimately concluded the report was not likely to be helpful and pursing the motion was not an effective use of resources.

Stallings argues Trial Counsel erred in failing to pursue this line of investigation and challenge the authenticity of the video. According to Stallings, the video "bore crucial authentication questions," and Trial Counsel acted unreasonably by stopping their investigation.[84] Stallings posits that the expert opined it was possible frames of the video were missing and those frames could have contained exculpatory information, such as height or visible tattoos. Stallings also argues Trial Counsel failed to press the State for the "original" video and therefore lost the opportunity to determine whether such exculpatory evidence existed.

Notwithstanding Stallings' arguments, it is plain from the record that Trial Counsel's representation objectively was reasonable. Trial Counsel investigated possible avenues to challenge the video's authenticity, but ultimately concluded such a challenge was unlikely to succeed. Authenticity is a low evidentiary hurdle that is satisfied "when there is evidence sufficient to support a finding by a reasonable juror that the proffered evidence is what its proponent claims it to be."[85] The State could have met this burden in any number of ways, including by asking Palmer to confirm that the video accurately depicted what occurred at the 7-

---

[84] Opening Br. at 49.
[85] D.R.E. 901; *Parker v. State*, 85 A.3d 682, 688 (Del. 2014).

Eleven.[86] Although the expert with whom Trial Counsel consulted identified the *possibility* that improper video handling resulted in manufactured frames or missing frames, the expert also acknowledged the mishandling likely was not intentional and there was no way to determine what frames, if any, were missing or altered. Such equivocal testimony likely would not have created a "genuine question of authenticity" sufficient to bring the issue into contention, let alone successfully exclude the video.[87] Having made that determination, Trial Counsel's decision not to spend further resources on that investigation was reasonable.

As to Trial Counsel's efforts to obtain an unenhanced version of the video, Trial Counsel specifically asked the State for the "original" video, which the State provided. This version turned out to have the same enhancement or resaving issues. Stallings contends Trial Counsel's failure to make additional efforts to find the "original" was unreasonable, but he fails to make any concrete showing of prejudice apart from mere speculation that the original existed, somehow was lost in the chain of custody, and theoretically could have contained exculpatory information. Broad-brush speculation is not sufficient to establish prejudice, particularly given the other overwhelming evidence of Stallings' guilt.

---

[86] D.R.E. 901(b)(1).
[87] *State v. Hill*, 2017 WL 1094369, at *2 (Del. Super. Mar. 22, 2017); *Graves v. State*, 2006 WL 496140, at *2 (Del. Super. Feb. 2, 2016).

## C. Trial Counsel's decision to pursue a motion to sever, rather than a motion to dismiss the reindictment, was strategic and objectively reasonable.

Finally, Stallings argues Trial Counsel should have moved to dismiss the reindictment, which charged Stallings with crimes relating to the April 1, 2012 robbery. Stallings contends the reindictment imposed additional pressure on him to accept a plea offer because (i) the reindictment added new charges related to an incident not previously indicted or investigated by Trial Counsel, (ii) Trial Counsel did not have sufficient time to investigate those new charges and prepare a defense, and (iii) the jury hearing the State's theory of a broader conspiracy increased the likelihood of a guilty verdict. Stallings argues Trial Counsel should have moved to dismiss the indictment under Superior Court Criminal Rule 48. Although Stallings acknowledges Trial Counsel filed a motion to dismiss, he argues the motion was based on a different theory and Trial Counsel therefore "lost the only opportunity to hold the State accountable for its unnecessary, and presumably strategic, delay and to assist Mr. Stallings' defense by weakening the State's case against him.[88]

Stallings' argument entirely ignores the fact that Trial Counsel filed a motion to sever the April charges from the September charges for purposes of trial, and that motion was denied by the trial court. In denying the motion to sever, the Trial Court reasoned that the risk of prejudice associated with trying all the charges

---

[88] Opening Br. at 58.

together largely was theoretical because even if the charges were not tried together it was likely, given the nature of the evidence, that a jury nevertheless would "hear about almost everything relating to all the charges".[89]

The Court's ruling denying the motion to sever shows it is highly unlikely the Court would have granted a motion to dismiss the newly-indicted charges under Rule 48. In order to dismiss an indictment under that rule, the Court must find, among other things, that the delay in bringing the charges prejudiced the defendant. The Court's ruling on the Motion to Sever found no actual prejudice in allowing all the charges to be tried together. Stallings has not shown he suffered any other prejudice typically considered under Rule 48. The addition of the charges did not lengthen Stallings' pretrial incarceration, and Trial Counsel advised the Court that they did not believe the addition of the new charges necessitated delaying the trial.[90]

Trial Counsel's decision to move to sever the charges, rather than move to dismiss under Rule 48, objectively was reasonable because the motion to sever had a higher likelihood of success. Moreover, Stallings has not demonstrated prejudice, because it does not appear Trial Counsel would have achieved a different result with a motion to dismiss. Accordingly, Trial Counsel's representation was not ineffective.

---

[89] D.I. 51 at 4.
[90] *See* D.I. 49.

35

## CONCLUSION

For all the foregoing reasons, Stallings' Motion for Postconviction Relief is

**DENIED. IT IS SO ORDERED.**